2007-NMCA-034

154 P.3d 76

CITY OF ROSWELL, Plaintiff–Appellee,

v.

Hiram HUDSON, Jr., Defendant–Appellant.

No. 26,085.

Court of Appeals of New Mexico.

Feb. 8, 2007.

Judy A. Pittman, Pittman & Dierlam, P.C., Roswell, NM, for Appellee.

Hiram Hudson, Jr., Roswell, NM, Pro Se Appellant.

## OPINION

VIGIL, Judge.

{1} This case requires us to determine whether Defendant was obstructing a police officer acting in the lawful discharge of his duties by simply refusing to produce his identification. We conclude he did not and therefore reverse.

## FACTS

{2} Officer Trujillo was on patrol duty in Roswell, New Mexico, when she received a call on her cell phone from one of her neighbors who said a vehicle was parked in their neighborhood for the last thirty minutes, which did not belong to anyone in the neighborhood. It was not unusual for neighbors to contact her or other police officers on their cell phones to report suspicious activity because Roswell is an active Neighborhood Watch Community, and the neighbors watch out for each other. There had been recent burglaries in the neighborhood, and such neighborhood vigilance often leads to solving burglaries.

{3} Officer Trujillo called Officer Kuepfer at approximately 11:30 p.m. and asked him to investigate because he was already in the vicinity. Due to the history of burglaries in the area, Officer Kuepfer decided to complete a field investigation card, which describes personal and descriptive information about the people at the scene. The information on the cards can then be used to locate possible suspects if any crime is subsequently reported in the area.

{4} When Officer Kuepfer arrived, a vehicle occupied by the driver and Defendant was parked on the street. Officer Kuepfer parked behind the car, shined his spotlight into the car, and ran a check on the license plate. The license plate first came back as not on file, but after subsequent discussions with the driver and Defendant, Officer Kuepfer determined that this was due to an error at the motor vehicle department.

{5} Officer Kuepfer approached the car and started questioning them about their purpose for being parked on the street. The driver told the officer that he lived in the house the car was parked in front of, and Officer Kuepfer asked the driver for his identification to verify his address. When the address on his driver's license did not match where they were parked, the driver stated that it was really Defendant who lived in the house. Officer Kuepfer then asked Defendant for his identification. Defendant told Officer Kuepfer his name and address but refused to produce his identification, stating he did not have to give the officer his identification. Officer Kuepfer testified that he asked again and after another refusal said, "well, right now you're obstructing me. I'm ... in the middle of an investigation here getting some information from you making sure that ... you are who you say you are."

{6} Defendant refused an additional request to produce his identification, and Officer Kuepfer arrested Defendant for obstructing an officer in violation of Roswell City Code Section 10–48 (1999). After handcuffing Defendant, Officer Kuepfer reached into Defendant's pocket and removed his wallet.

He then searched through the wallet, and retrieved Defendant's driver's license which provided a positive identification of Defendant. Shortly thereafter, Officer Trujillo arrived at the scene and told Officer Kuepfer that she knew Defendant and that he lived in the house where the car was parked. Nevertheless, Officer Kuepfer issued Defendant a citation for obstructing an officer in violation of Section 10–48. Defendant was convicted in the Roswell municipal court of obstructing an officer in violation of Section 10–48 because he refused to present his identification to Officer Kuepfer after being ordered to do so. A de novo appeal to the district court again resulted in a conviction, and Defendant appeals, arguing that the evidence is insufficient to support the guilty verdict. Rule 8–703 NMRA (providing that an aggrieved party may appeal from a final order of the municipal court to the district court, that trials upon appeals from the municipal court to the district court are de novo, and that an appeal from the final order of the district court to the New Mexico Supreme Court or Court of Appeals is permitted as authorized by law).

**STANDARD OF REVIEW**

{7} Roswell City Code, Section 10–48 makes it illegal to resist or obstruct an officer, and provides in pertinent part that "[o]bstructing an officer consists of [r]esisting, obstructing, or abusing any ... peace officer in the lawful discharge of his duties." In reviewing the verdict for sufficiency of the evidence, our role is to assess whether the fact finder could determine beyond a reasonable doubt the essential facts necessary to prove these elements. *State v. Garcia,* 2005–NMSC–017, ¶ 12, 138 N.M. 1, 116 P.3d 72. In doing so, we view the evidence in the light most favorable to the verdict, considering that the City had the burden of proof beyond a reasonable doubt. *Id.*

**THE SEIZURE OF DEFENDANT**

■ {8} The Fourth Amendment to the United States Constitution protects persons against unreasonable searches and seizures. While a police officer does "not need any justification to approach a person and ask that individual questions," *State v. Jason L.,* 2000–NMSC–018, ¶ 14, 129 N.M. 119, 2 P.3d

856, when a police officer restrains the person's freedom to walk away, by either physical force or a show of authority, he has "seized" that person. *State v. Lopez,* 109 N.M. 169, 170, 783 P.2d 479, 480 (Ct.App. 1989) (internal quotation marks and citation omitted). Therefore, if all of the circumstances surrounding the encounter establish that a reasonable person would believe he is not free to leave, the encounter must be scrutinized for its reasonableness under the Fourth Amendment. *Id.* We therefore first determine whether Defendant was seized when Officer Kuepfer demanded his identification. While we defer to the district court's factual determinations for substantial evidence, the question of whether Defendant was free to leave, and therefore seized, is a legal question, which we review de novo. *State v. Patterson,* 2006–NMCA–037, ¶ 18, 139 N.M. 322, 131 P.3d 1286.

■ {9} *Lopez* teaches that when determining whether a reasonable person would feel free to leave, courts should look at all of the factual circumstances, and specifically consider: "(1) the conduct of the police, (2) the person of the individual citizen, and (3) the physical surroundings of the encounter." 109 N.M. at 171, 783 P.2d at 481. We have continued to adhere to this analysis. *See Patterson,* 2006–NMCA–037, ¶ 20, 139 N.M. 322, 131 P.3d 1286; *State v. Affsprung,* 2004–NMCA–038, ¶ 12, 135 N.M. 306, 87 P.3d 1088; *Jason L.,* 2000–NMSC–018, ¶ 15, 129 N.M. 119, 2 P.3d 856.

{10} In *Patterson,* a police officer observed a car drive into the parking lot of a closed business at approximately 10:40 p.m. 2006–NMCA–037, ¶ 2. Thinking this behavior was odd, and because there had been several burglaries in the twenty-block area, the officer pulled his patrol car behind the car to investigate why it was stopped at that location. *Id.* The car was occupied by the driver, the defendant in the front passenger seat, and a passenger in the backseat. *Id.* A fourth person was standing outside an open rear passenger door on the driver's side. *Id.* The officer asked the person outside what they were doing there, and the person said that they were there to pick up a truck from a friend, whose name he did not know. *Id.*

¶ 3. The officer saw that there was no truck in the area, and found the answer suspicious. *Id.* As he spoke with the person outside, he saw an open can of beer on the backseat floorboard behind the driver's side of the car. *Id.* For officer safety, he conducted a pat-down search of the man he was speaking to and discovered contraband. *Id.* After the officer handcuffed and secured him in the police car, another officer arrived on the scene. *Id.* The original police officer then asked the defendant and other occupants of the car for identifications to check for warrants for arrest, to see "who he was dealing with," and to give him "a point of reference" if there were any burglaries later that evening. *Id.* ¶ 4 (internal quotation marks omitted). We held that the defendant was seized at the moment when he was asked for identification. *Id.* ¶ 21. We based our conclusion on the totality of the circumstances, including: (1) the officer had clearly identified himself as a police officer, although he had not engaged his emergency equipment; (2) the officer had just demonstrated his authority by conducting a pat-down search of the man outside; (3) the request for identification could only be viewed as an integral part of the officer's ongoing investigatory detention of the occupants of the vehicle; and (4) the officer had an explicit purpose in asking for the identification. *Id.*

{11} In *Affsprung,* the defendant was a passenger in a vehicle that was stopped by a police officer at 12:43 a.m. in a residential area for a faulty license plate light. 2004–NMCA–038, ¶ 2, 135 N.M. 306, 87 P.3d 1088. The officer did not observe any other illegal or suspicious activity before he pulled the vehicle over using his emergency equipment. *Id.* The officer asked the driver for his driver's license, and after informing the driver of the violation, asked the defendant for identification, because it was his routine practice to do so. *Id.* The defendant did not have a driver's license or any other form of identification on him, but orally gave the officer his name, date of birth, and social security number. *Id.* The officer used this information to run a "wants and warrants check" on the defendant while writing the driver the citation. *Id.* Through this process, the officer learned that there was an outstanding warrant for the defendant's arrest. *Id.* ¶ 3. After backup arrived, the defendant was arrested, and contraband was subsequently discovered inside a cigarette box in one of his pockets. *Id.* We recognized that under the circumstances a reasonable passenger would not feel free to leave and refuse the officer's request for identification, and that an officer would not likely tolerate a passenger's refusal to give the information followed by the passenger leaving the area. *Id.* ¶¶ 15–16. We therefore held "that an ordinary vehicle stop for a traffic violation with a concomitant investigation in which the officer requests both the driver's and the passenger's identification in connection with the violation and nothing more than a generalized concern about officer safety is a seizure within the Fourth Amendment as to the passenger whose identification is obtained." *Id.* ¶ 18.

{12} Finally, in *Lopez,* the defendant and his companion were lawfully parked in a pickup on a dead-end street, facing away from the dead end. 109 N.M. at 171, 783 P.2d at 481. While they were parked, a gray van carrying four police detectives drove up and parked at an angle directly in front and about a car length away from the pickup. *Id.* Four police detectives got out of the van and went toward the defendant's vehicle, with at least two of the detectives displaying their police badges at shoulder height. *Id.* One of the officers went to the passenger's side, and while standing outside, said he saw contraband inside the pickup on the seat between the defendant and his passenger. *Id.* We concluded the evidence supported a finding that the officers used both a show of force and a show of authority to restrain the defendant and that a reasonable person in defendant's position would not have believed he was free to leave. *Id.* at 173, 783 P.2d at 483. Thus, the defendant was seized under the Fourth Amendment before the detective stood next to his vehicle and saw the contraband inside. *Id.*

{13} In this case, Defendant was sitting in the passenger side of a car at approximately 11:30 p.m. when Officer Kuepfer arrived in a marked police unit, parked behind the car, and shined his spotlight into the car. As in

*Lopez,* Defendant and the driver were legally parked and not engaged in any illegal or suspicious activity. They were simply sitting in the vehicle. A police car coming behind them, stopping, and shining its spotlight at them at that hour of the night constituted a show of police authority. Officer Kuepfer then walked up to the car in his police uniform, identified himself as a police officer, and started asking the occupants why they were parked on the street. During this interrogation, he demanded identification from the driver, and it was produced. After thus demonstrating his authority as a police officer, Officer Kuepfer then demanded that Defendant produce identification. These circumstances conveyed the message that compliance with his request was required. *See Jason L.,* 2000–NMSC–018, ¶ 14, 129 N.M. 119, 2 P.3d 856 (noting that while a police officer does not need justification to approach a person and ask questions, the officer may not convey the message that compliance with his request is required). As in *Patterson,* Officer Kuepfer's demand for identification can only be viewed as an integral part of his ongoing investigatory detention of the vehicle, and to complete a field investigation card to use in case any burglaries were *later* committed in the neighborhood. Finally, Defendant was a passenger in the vehicle, and like the passenger in *Affsprung,* a reasonable passenger in Defendant's position would not feel free to simply get out of the car, leave, and refuse Officer Kuepfer's demand for identification. The fact that Officer Kuepfer arrested Defendant for refusing to produce identification establishes that he did not tolerate Defendant's refusal and that he would not have allowed Defendant to leave.

{14} Given the totality of the circumstances, when Officer Kuepfer demanded identification from Defendant, he was detained in such a way that a reasonable person would not feel free to leave. *See Patterson,* 2006–NMCA–037, ¶ 18, 139 N.M. 322, 131 P.3d 1286; *Affsprung,* 2004–NMCA–038, ¶ 6, 135 N.M. 306, 87 P.3d 1088. We therefore hold that Defendant was seized under the Fourth Amendment when Officer Kuepfer demanded that Defendant produce identification.

## INDIVIDUALIZED REASONABLE SUSPICION

{15} In "appropriate circumstances" a police officer may detain a person to investigate possible criminal activity consistent with the Fourth Amendment even if there is no probable cause to make an arrest. *State v. Galvan,* 90 N.M. 129, 131, 560 P.2d 550, 552 (Ct.App.1977). "Appropriate circumstances" arise from a "reasonable suspicion" that the law is or has been broken. *Id.* In order for the suspicion to be "reasonable," it must be based on specific articulable facts, together with rational inferences from those facts, that a particular person, the one actually detained, is breaking, or has broken, the law. *State v. Watley,* 109 N.M. 619, 624, 788 P.2d 375, 380 (Ct.App.1989). "Unsupported intuition and inarticulate hunches are not sufficient." *State v. Cobbs,* 103 N.M. 623, 626, 711 P.2d 900, 903 (Ct. App.1985). Whether a police officer acts with a reasonable suspicion is judged by an objective standard: "Would the facts available to the officer warrant the officer, as a person of reasonable caution, to believe the action taken was appropriate?" *Galvan,* 90 N.M. at 131, 560 P.2d at 552. Finally, the police officer must have a reasonable suspicion at the inception of the detention. *See State v. Eli L.,* 1997–NMCA–109, ¶ 11, 124 N.M. 205, 947 P.2d 162. We reiterated and applied the foregoing principles and authorities in *Jason L.,* 2000–NMSC–018, ¶ 20, 129 N.M. 119, 2 P.3d 856, but cite the older cases to emphasize that these principles are embedded and well settled in Fourth Amendment jurisprudence.

{16} The City agrees that Officer Kuepfer was required to have a reasonable suspicion to detain Defendant and demand identification from him. Again, while we defer to the district court's factual determinations if they are supported by substantial evidence, whether Officer Kuepfer acted with a reasonable suspicion presents us with a legal question, which we review de novo. *Eli L.,* 1997–NMCA–109, ¶ 6, 124 N.M. 205, 947 P.2d 162; *Jason L.,* 2000–NMSC–018, ¶ 20, 129 N.M. 119, 2 P.3d 856.

{17} In this case, the City contends that Officer Kuepfer had a reasonable suspicion to detain Defendant for the following reasons: (1) a neighbor reported to Officer Trujillo that an unknown vehicle was parked in their neighborhood; (2) there had been recent burglaries in the neighborhood; (3) when Officer Kuepfer arrived to investigate at approximately 11:30 p.m., he found two men sitting in a parked vehicle on the street in that neighborhood; (4) the license plate on the car was initially reported as not on file; (5) the driver claimed that he lived in the house the vehicle was parked in front of; (6) the address on his driver's license did not match the address his car was parked in front of; and (7) the driver then changed his story and said that Defendant was the one who lived there. The totality of these circumstances fails to establish a reasonable individualized suspicion that Defendant was breaking or had broken the law when Officer Kuepfer demanded Defendant's identification.

{18} We stress the importance of the need for *individualized* suspicion, which focuses on the specific conduct of the person who is detained. If a police officer lacks individualized suspicion, "the government's interest in crime prevention will not outweigh the intrusion into the individual's privacy" and the detention violates the Fourth Amendment. *Patterson*, 2006–NMCA–037, ¶ 16, 139 N.M. 322, 131 P.3d 1286.

{19} The only facts specific to Defendant are that he was sitting in the vehicle under the circumstances we have described. A general suspicion arising from the fact that a car in which Defendant was a passenger was parked for thirty minutes on a street late at night in a neighborhood where recent burglaries, but none that night, had occurred does not give rise to an individualized suspicion that Defendant was committing or had committed a crime. *See id.*, ¶¶ 2–4, 27–28 (concluding there was no reasonable suspicion entitling the police officer to demand identification from the defendant who was a mere passenger in a car pulling into an empty commercial parking lot at 10:40 p.m. in an area where recent burglaries had occurred).

{20} The initial information that the license plate number on the car was not on file with the motor vehicle department fails to establish a reasonable suspicion concerning Defendant. Before he demanded Defendant's identification, Officer Kuepfer learned that there was no problem with the car's registration. To the extent that the driver's other actions contributed to a reasonable suspicion that the driver had committed or was committing a crime, those actions alone cannot be converted into a reasonable suspicion that Defendant was committing or had committed a crime. *See id.* ¶ 28 (concluding that the state's argument did not point to any facts particular to the defendant that would lead to individualized suspicion he was violating the law, although there was individualized suspicion that another passenger in the car was or had been violating the law by possessing an open can of beer in the car); *Jason L.*, 2000–NMSC–018, ¶ 22, 129 N.M. 119, 2 P.3d 856 (affirming that a police officer could not rely on the behavior of the defendant's companion to establish individualized suspicion to search the defendant).

{21} The City fails to identify any specific crime it asserts Officer Kuepfer had a reasonable suspicion that Defendant had committed or was committing. Furthermore, Officer Kuepfer's own testimony negates the City's general assertion that he was motivated by a reasonable, individualized suspicion in detaining and demanding identification from Defendant. Before reaching the scene, Officer Kuepfer decided to fill out a field investigation card because there had been a problem "with criminal damages in that area." In order to fill out the card, Officer Kuepfer needed identification from the occupants of the vehicle. On the other hand, he had no intention of arresting Defendant that night, and he acknowledged that "there was no crime at that point that [he] could determine." Nevertheless, Officer Kuepfer continued demanding to see Defendant's identification because he wanted to "put it on a little card" for possible use in the future if a crime was reported later that night. Even though Defendant exhibited no indication that he was lying, Officer Kuepfer insisted on the identification "[b]ecause it wouldn't have been the first time that anyone's ever lied to

**268**

[him] about who they are" as people do it "regularly." We therefore conclude that Officer Kuepfer did not have a reasonable suspicion that justified detaining Defendant and demanding his identification.

{22} The United States Supreme Court held in *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637 (1979), that the defendant could not be punished for failing to identify himself in the absence of reasonable suspicion permitting the officers to request that he identify himself. *Id.* at 53, 99 S.Ct. 2637. Under the circumstances of this case, in which no officer safety or public safety considerations have been raised, we similarly conclude that Defendant should not have been convicted for refusing to give the officer his driver's license.

## CONCLUSION

{23} The evidence fails to establish that Defendant's passive refusal to produce his identification obstructed or prevented Officer Kuepfer from performing his duties as a police officer in the circumstances of this case.

{24} Defendant's conviction is reversed.

{25} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and IRA ROBINSON, Judges.