IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,

   Plaintiff-Appellee,

v.                                                        NO. 27,507

MIGUEL ANGEL JASSO,

   Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Douglas R. Driggers, District Judge

Gary K. King, Attorney General
Santa Fe, NM
James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

   Defendant was arrested on an outstanding municipal warrant, and during a pat-down incident to being booked into jail, a baggy of cocaine was found in Defendant's sock.  The warrant was discovered during an encounter between

Defendant and Officer Solis after Defendant produced his identification for Officer Solis. Defendant's motion to suppress was denied by the district court after a hearing. Defendant thereupon entered into a conditional plea of guilty to possession of a controlled substance, reserving his right to appeal the denial of his motion to suppress, and Defendant now appeals. We hold that Defendant was seized by Officer Solis without a reasonable suspicion when Defendant produced his identification for Officer Solis. We therefore reverse the district court.

**FACTS**

The only witness who testified at the hearing on the motion to suppress was Officer Solis of the Las Cruces Police Department, and the material facts are undisputed. Officer Solis was in uniform and on patrol in his marked police car when he saw Defendant walking through a vacant lot at approximately 8:53 a.m. Although he did not observe any criminal activity and he was not investigating any crime, Officer Solis advised central control he was going to stop and talk to him. Officer Solis pulled up behind Defendant, got out of his police car, called out to Defendant, and identified himself as a police officer. Officer Solis approached Defendant and asked if he could talk to Defendant. Defendant answered, "Yeah." Officer Solis asked Defendant if he could pat down Defendant, "just for my safety since I was going to be talking to him, so that I could feel more comfortable talking to him

knowing that he didn't have any weapons on him." Defendant responded, "Yes. Go ahead." Officer Solis' stated reason for asking to search for weapons was because Defendant was wearing baggy pants—although he admitted he does not stop everyone who is wearing baggy pants, and he does not pat down everybody on the street who is wearing baggy pants. Officer Solis asked Defendant what he was doing and where he was going. Defendant said he was going to a friend's house. While conducting the pat-down search of Defendant, Officer Solis felt a hard object in one of his pockets and asked Defendant what it was. Defendant responded that it was a cell phone. Officer Solis asked if he could take the cell phone out of his pocket and, after Defendant said he could, Officer Solis took not only the cell phone, but also cigarettes and a new glass pipe out of Defendant's pocket and placed them on the hood of his police unit. Although these items were not illegal, and Defendant violated no law, Officer Solis asked Defendant if he had an identification card, and Defendant gave it to him. "I told him that I was just going to write his information down and then I ran him for warrants. I advised him as soon as I got the return from central control, he would be free to go. He could continue on his way." The check revealed that there was an outstanding arrest warrant from the City of Las Cruces, and Officer Solis arrested Defendant. During the booking process which followed at the jail, a baggy of cocaine was found in Defendant's sock, which resulted in Defendant being charged

with one count of felony possession of a controlled substance. Defendant argued in the district court and continues to assert on appeal that the discovery of the baggy was the result of a seizure of his person by Officer Solis in violation of the Fourth Amendment and that its use at trial must be suppressed. On the other hand, the State argues that suppression is not required because Defendant consented to being stopped, searched, and in providing his identification to Officer Solis.

**ANALYSIS**

The applicable principles and standard of review governing this case are well settled as stated in *City of Roswell v. Hudson*, 2007-NMCA-034, ¶ 8, 141 N.M. 261, 154 P.3d 76:

> The Fourth Amendment to the United States Constitution protects persons against unreasonable searches and seizures. While a police officer does not need any justification to approach a person and ask that individual questions, when a police officer restrains the person's freedom to walk away, by either physical force or a show of authority, he has 'seized' that person. Therefore, if all of the circumstances surrounding the encounter establish that a reasonable person would believe he is not free to leave, the encounter must be scrutinized for its reasonableness under the Fourth Amendment . . . .While we defer to the district court's factual determinations for substantial evidence, the question of whether Defendant was free to leave, and therefore seized, is a legal question, which we review de novo.

(Internal quotation marks and citations omitted). To determine "whether a reasonable person would feel free to leave, courts should look at all of the factual circumstances,

4

and specifically consider: (1) the conduct of the police, (2) the person of the individual citizen, and (3) the physical surroundings of the encounter." Id. ¶ 9. (internal quotation marks and citations omitted); *see State v. Soto*, 2008-NMCA-032, ¶ 6, 143 N.M. 631, 179 P.3d 1239 ("The question of whether the circumstances would have caused a reasonable person to believe he or she was not free to decline the officers' requests is a legal inquiry, which we review de novo."), *cert. granted*, 2008-NMCERT-002, 143 N.M. 667, 180 P.3d 674. We conclude that this case is governed by *Soto* and hold that Defendant was seized when Officer Solis asked Defendant for his identification. We do so without deciding whether Defendant was seized by Officer Solis at some earlier time in the encounter.

In *Soto*, two police officers in a marked police car saw the defendant riding his bicycle on a road near a racetrack's secured area around 2:30 a.m., and the officers decided to see where he was heading. *Id*. ¶ 1. When the patrol car pulled up next to the defendant's bicycle, the defendant stopped, dropped something out of his hand, and put his foot on it. *Id*. The officers introduced themselves and asked the defendant questions concerning where he was going, where he lived, and then asked him for his identification. *Id*. The defendant produced his driver's license, and the officers ran a warrant check, discovering that there was a felony warrant for the defendant. *Id*. After arresting the defendant and placing him in the patrol car, the officers retrieved

the object the defendant had dropped earlier. *Id.* ¶ 3. It was a jeweler's bag containing methamphetamine, and the defendant was charged with possession of a controlled substance. *Id.* ¶¶ 3-4. We concluded that the defendant was seized without reasonable, individualized suspicion in violation of the Fourth Amendment. *Id.* ¶ 1. Answering the state's argument that the defendant had not submitted to police authority and was therefore not seized, *id.* ¶¶ 9-10, we said:

> In the present case, the patrol car containing two officers pulled up next to [the d]efendant's bicycle, and [the d]efendant submitted to this show of authority by stopping his bicycle. In addition to the assertion of authority evidenced by the patrol car pulling up next to [the d]efendant, the officers then began questioning [the d]efendant about his activities, asked [the d]efendant for identification, and retained [the d]efendant's driver's license in order to run a warrant check, all of which, in combination with the lateness of the hour and [the d]efendant's isolation on the road, conveyed to [the d]efendant that the officers expected [the d]efendant to comply with their requests.

*Id.* ¶ 13.

This case is not materially different from *Soto.* Officer Solis was in uniform and in his marked police car when he decided he was going to stop and talk to Defendant who was walking through a vacant lot. Officer Solis pulled up behind Defendant, got out of his police car, identified himself to Defendant as a police officer. Officer Solis approached Defendant and asked if he could talk to Defendant. Defendant answered affirmatively, but Officer Solis said he first wanted to search

Defendant, telling Defendant it was "for my safety." Officer Solis then searched Defendant, and feeling something hard, asked what it was. When Defendant said it was a cell phone and Officer Solis said he wanted to take it out of Defendant's pocket, he not only took the cell phone, he also took out cigarettes and a glass pipe, and put all three items on top of the police car. With Defendant's property on the police car, Officer Solis asked Defendant for his identification, telling Defendant he wanted to check for warrants on Defendant. We hold that given what had already taken place, when Officer Solis put Defendant's property on the police car, and asked Defendant for his identification, telling Defendant he wanted to check for warrants, no reasonable person would have come to any conclusion other than that compliance with Officer Solis' request for identification was expected. The totality of the police conduct in this case communicated to Defendant, as a reasonable person, that he was not free to decline Officer Solis' request for identification or to terminate the encounter at that time and demand that his identification be returned to him. Our Statement in *Soto* that "the surrounding circumstances reflected more coercion than mere questioning and a request for identification" applies with equal force to the facts of this case. *Id.* ¶ 16. In fact, Officer Solis expressly told Defendant he would be "free to go" and that "he could continue on his way" after "I got the return from central control."

*Hudson* is also quite similar to the facts before us in this case. In *Hudson*, a

7

police officer who was on patrol received a call from one of her neighbors that a vehicle was parked in their neighborhood which did not belong to anyone in the neighborhood. 2007-NMCA-034, ¶ 2. She radioed another police officer at approximately 11:30 p.m. who was on patrol in the vicinity of the neighborhood and asked him to investigate. *Id*. ¶ 3. The officer decided he was going to complete a field investigation card, which contains personal and descriptive information about the people at the scene. *Id*. The officer arrived at the scene in his marked police unit and saw the vehicle parked on the street, occupied by the defendant and another person. *Id*. ¶ 4. The officer pulled up behind the parked vehicle, shined his spotlight into the car, and ran a check on the license plate. *Id*. The officer then approached the car and asked the occupants what their purpose was in being parked on the street. *Id*. ¶ 5. The driver said he lived in the house the car was parked in front of, but when the address on his driver's license did not match the address (the officer had asked for the license to verify his address), the driver said it was really the defendant who lived there. *Id*. The officer then asked the defendant for his identification, and the defendant told him his name and address but refused to produce his identification. *Id*. After the defendant refused a third request from the officer to produce his identification, the officer arrested him for obstructing an officer in violation of a city ordinance. *Id*. ¶ 6. After analyzing the factual context and existing precedent, we concluded, "[g]iven

8

the totality of the circumstances, when [the officer] demanded identification from [the d]efendant, he was detained in such a way that a reasonable person would not feel free to leave. We therefore hold that [the d]efendant was seized under the Fourth Amendment when [the officer] demanded that [the d]efendant produce identification." *Id.* ¶ 14 (citations omitted).

Since Defendant was seized under the Fourth Amendment and it is uncontested that Officer Solis had no reasonable suspicion of criminal activity on Defendant's part, the seizure violated the Fourth Amendment. *See State v. Patterson*, 2006-NMCA-037, ¶¶ 15, 16, 139 N.M. 322, 131 P.3d 1286 (explaining that an investigatory detention must be supported by reasonable suspicion of criminal activity and that to justify detention, suspicion must be particular to the individual being detained). Nevertheless, the State argues that discovery of the contraband in Defendant's sock was sufficiently attenuated from the Fourth Amendment violation to permit its admission into evidence. We disagree. The same argument was made in *Soto*, and we rejected it. *Soto,* 2008-NMCA-032, ¶¶ 21-27. We have considered the State's attempt to distinguish *Soto*, and we conclude that its arguments are unpersuasive. We therefore hold that the discovery of the outstanding warrant did not dissipate the taint of Defendant's illegal detention.

**CONCLUSION**

The order of the district court denying Defendant's motion to suppress is reversed and the case is remanded for further proceedings.

**IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**CELIA FOY CASTILLO, Judge**