This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                                    **No. 31,698**

**CHRISTOPHER BLACKWELL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Gary K. King, Attorney General
Pranava Upadrashta, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

Defendant appeals from a consolidated plea agreement that reserved the right to challenge the denial of his motion to suppress as it related to two of his convictions. On appeal, he argues that he was subjected to a traffic stop that lacked reasonable suspicion, that the officer thereafter conducted an illegal, warrantless search, and that the length of the detention amounted to a de facto arrest. We affirm the district court's order.

**BACKGROUND**

San Juan County Deputy Gary Mauldin testified that he was on patrol in the area around Navajo Dam on January 1, 2011. Deputy Mauldin had knowledge of several residential burglaries in his patrol area during the months prior, including a burglary at the Teel residence. The Teel residence was the only house on its road and was set back about three quarters of a mile from County Road 511. During the investigation of the earlier burglary at the Teel residence, which took place on October 22, 2010, Ms. Teel informed Deputy Mauldin that her husband was being treated for health problems down south, that they were in the process of moving, and that the house would remain vacant for weeks at a time during this period.

Concerned that the house would be burglarized again, because numerous weapons remained inside it, Deputy Mauldin alerted nearby oil workers and residents to keep an eye on the residence and to inform him of suspicious activity. On January

1, 2011, Deputy Mauldin received a voice mail from one of the oil workers, and shortly thereafter he received a similar dispatch, both of which alerted him to "check out" the residence, and advised him of a suspicious vehicle. Upon receiving this information Deputy Mauldin proceeded along County Road 511 toward the Teel residence. It had snowed overnight, and Deputy Mauldin did not recall any other traffic as he drove along the road.

Near the base of Navajo Dam, Deputy Mauldin observed a red Dodge pickup truck coming toward him from the opposite direction. Deputy Mauldin slowed down "quite a bit," and as the vehicle passed, he noticed a black wood pellet stove in the bed of the truck. He did a U-turn and saw a washer and dryer in the bed of the truck as well. After seeing the items, Deputy Mualdin initiated the stop. The district court subsequently ruled that the stop was supported by reasonable suspicion and denied Defendant's motion to suppress.

**STANDARD OF REVIEW**

On appeal from a district court's ruling on a motion to suppress, findings of fact are reviewed to determine if they are supported by substantial evidence and legal conclusions are reviewed de novo. *State v. Leyba*, 1997-NMCA-023, ¶ 8, 123 N.M. 159, 935 P.2d 1171. "In reviewing the application of law to facts, we view the facts

3

in a manner most favorable to the prevailing party." *State v. Baca*, 2004-NMCA-049, ¶ 11, 135 N.M. 490, 90 P.3d 509.

**DISCUSSION**

In his brief in chief, Defendant lists two issues, but it is clear from the substance of his arguments that he is raising three distinct issues. He challenges the inception of the traffic stop, the search that ensued, and the length of the detention. We address these three issues separately.

**I.      Inception of the Stop**

Defendant's primary argument in this appeal is that Deputy Mauldin lacked reasonable suspicion to initiate the traffic stop. "A police officer cannot forcibly stop an individual for purposes of investigation merely on the basis of an inchoate and unparticularized suspicion or hunch that criminal activity may be afoot." *State v. Urioste*, 2002-NMSC-023, ¶ 10, 132 N.M. 592, 52 P.3d 964 (internal quotation marks and citation omitted). "Rather, the officer must look at the totality of the circumstances—the whole picture." *Id.* (internal quotation marks and citation omitted). "The officer must be able to form a reasonable suspicion, based on objective facts, that the individual in question is, or is about to be, engaged in criminal activity." *Id.* (internal quotation marks and citations omitted).

Defendant argues that Deputy Mauldin lacked reasonable suspicion for the traffic stop because he did not have any information that a traffic violation or any other crime had occurred; rather, Defendant argues, Deputy Mauldin was acting pursuant to a "generalized" suspicion or a hunch. *See State v. Neal*, 2007-NMSC-043, ¶ 31, 142 N.M. 176, 164 P.3d 57 (refusing to find reasonable suspicion where the "circumstances smack[ed] more of the type of conjecture and hunch [that] . . . have [been] rejected in the past as insufficient to constitute reasonable suspicion"); *City of Roswell v. Hudson*, 2007-NMCA-034, ¶¶ 18-19, 141 N.M. 261, 154 P.3d 76 (explaining that a "general suspicion" does not rise to the level of the requisite "individualized suspicion" that would justify a detention).

Defendant's argument appears to rest on the absence of a reported crime, presumably by the Teels or someone who was in a position to know whether the items were lawfully or unlawfully removed from the house. The definition of reasonable suspicion, however, does not require an actual crime report, but instead allows for a consideration of all of the facts available to the officer in determining whether there is reasonable suspicion of criminal activity. Here, Deputy Mauldin considered the fact that the Teel residence had been burglarized before, that a report came in that a truck was leaving the road in the remote area of the residence with household items, and that he shortly thereafter saw a truck with household items similar to those that he had

observed in the Teel residence, with virtually no other traffic in the vicinity. Deputy Mauldin testified that as part of his investigation of the October burglary, he walked through and looked at what was left in the residence.

During calendaring, in his docketing statement, Defendant stated that the deputy did not observe the wood stove and washer and dryer in the back of the truck until after he stopped the vehicle and lifted up the rug. Yet trial counsel's assertion was wrong. *Cf*. Rule 12-208(D)(3) NMRA (requiring the docketing statement to provide accurate facts). The actual testimony was that, as he drove past the vehicle, Deputy Mauldin recognized a wood pellet stove and recalled that he had seen the same type of stove at the residence during the earlier investigation. After the U-turn, he also saw a washer and dryer, and he recognized the washer as the same one he saw at the Teel residence because it was next to the window that had been broken to gain access for the burglary in October. Deputy Mauldin then proceeded to stop Defendant's vehicle. We believe that this testimony, which ties the household items to the Teel residence, provides critical supporting information that was not made available to this Court during its calendaring process of this case.

Defendant refers us to *Hudson*, 2007-NMCA-034. In *Hudson*, a citizen called a police officer and asked the officer to check on a vehicle, which did not belong to anyone in the citizen's neighborhood and had been parked in the neighborhood for

thirty minutes. *Id.* ¶ 2. The officer contacted another officer, who saw a vehicle occupied by the driver and the defendant, who were legally parked on the street and who were not engaged in suspicious activity. *Id.* ¶¶ 3, 13. The officer walked up to occupants and demanded their identification, an action that this Court determined to have been a seizure. *Id.* ¶¶ 13-14. We concluded that the detention lacked reasonable suspicion. We explained that

> [a] general suspicion arising from the fact that a car in which [the d]efendant was a passenger was parked for thirty minutes on a street late at night in a neighborhood where recent burglaries, but none that night, had occurred does not give rise to an individualized suspicion that [the d]efendant was committing or had committed a crime.

*Id.* ¶ 19.

The present case is distinguishable from *Hudson*. Contrary to Defendant's claim that Deputy Mauldin was merely acting on a hunch, Deputy Mauldin testified that he initiated the stop based on information that he had gathered during the earlier investigation. He knew that the home was vacant for weeks at a time, and he had information from a citizen informant that there was suspicious activity in the area of the residence. Most importantly, he recognized the Teel household items in the back of Defendant's vehicle prior to the initiation of the stop. Under these circumstances, Deputy Mauldin had the individualized suspicion that the officer lacked in *Hudson*. We also note that Deputy Mauldin could rely on his training and experience in

considering the information before him. *Cf. State v. Van Dang*, 2005-NMSC-033, ¶ 16, 138 N.M. 408, 120 P.3d 830 (considering, as part of its reasonable suspicion determination, whether the officer's training and experience "enhanced his ability to derive and articulate particularized and objective indicia of criminal activity").

**II.    Defendant's Challenge to the Search**

Defendant next argues that Deputy Mauldin conducted an illegal search when he lifted up the rug that covered items in the bed of the pickup. We consider "whether the officer's actions . . . were reasonably related in scope to the circumstances that initially justified the stop." *State v. Rubio*, 2006-NMCA-067, ¶ 11, 139 N.M. 612, 136 P.3d 1022. Once an officer makes a lawful stop, he may expand the investigation beyond the circumstances that originally justified the stop, provided that "the officer has a reasonable and articulable suspicion that other criminal activity has been or may be afoot." *State v. Romero*, 2002-NMCA-064, ¶ 10, 132 N.M. 364, 48 P.3d 102.

As we have stated, Deputy Mauldin had already seen the wood stove and the washer/dryer in plain view prior to initiating the stop. Deputy Mauldin testified that he lifted up the rug that was partially covering the items in the bed of the truck so that he could get a better look at the washer/dryer to confirm his suspicion that they were in fact the items he had seen in the Teel residence. Given the facts known to the officer at that point, we believe that the minimal intrusion of lifting the rug to verify

or dispel his suspicion was reasonable. *See id.* ¶¶ 12-21 (holding that an officer could lawfully open the driver's door and inspect a secondary vehicle identification number on the door frame upon reasonable suspicion that the vehicle may be stolen).

## III.    De Facto Arrest

Defendant argues that the length of the investigatory detention amounted to a de facto arrest. "When a detention exceeds the boundaries of a permissible investigatory stop, it becomes a de facto arrest requiring probable cause." *State v. Flores*, 1996-NMCA-059, ¶ 15, 122 N.M. 84, 920 P.2d 1038. The determination of whether an arrest was made depends on "whether the officer['s] actions were reasonable under the circumstances as juxtaposed against [a] defendant['s] right to be free of arbitrary interference by the officers." *State v. Lovato*, 112 N.M. 517, 522, 817 P.2d 251, 256 (Ct. App. 1991). "A court should consider both the length of the detention and the manner in which it is carried out when determining whether a lawfully[]initiated investigatory detention has become unlawfully extended." *State v. Sewell*, 2009-NMSC-033, ¶ 17, 146 N.M. 428, 211 P.3d 885.

Here, Defendant does not specify the precise chronology of events to point to exactly where he believes the detention turned into an arrest; instead he appears to argue that Deputy Mauldin should have ended the stop after briefly questioning him. Defendant suggests that the only way Deputy Mauldin could have prolonged the stop

was following Defendant's confession to the burglary. As we explained earlier, however, Deputy Mauldin was dealing with an evolving situation where the flow of information was bolstering the initial suspicion of criminal activity. *State v. Porras-Fuerte*, 119 N.M. 180, 184, 889 P.2d 215, 219 (Ct. App. 1994) (stating that "it may be said that reasonable suspicion is evaluated on a sliding scale such that as the degree of intrusion intensifies so must the probativeness of the articulated circumstances").

About five or ten minutes after he initiated the stop, Deputy Mauldin received additional information regarding the description of the driver and matching the color of the truck to the vehicle seen at the residence. At this point, Defendant was still in the cab of the truck. It is not clear from the record precisely how long it was from that point until Defendant admitted that he had in fact been at the Teel residence, at which time he was handcuffed and placed in Deputy Mauldin's vehicle. *Cf. State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (observing that there is a presumption of correctness in the rulings or decisions of the district court and the party claiming error bears the burden of showing such error). Nevertheless, it does not appear that the length of the detention was unreasonably excessive given the circumstances; indeed, to the extent that Defendant is concerned that there was no reported crime, we believe that Deputy Mauldin's information allowed for enough

time to look into that aspect of the investigation. In short, our review of the record does not indicate that Deputy Mauldin carried out his investigation in a manner that must be deemed unreasonable.

**CONCLUSION**

For the reasons set forth in this Opinion, we affirm the district court's order.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

_____
**J. MILES HANISEE, Judge**