This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36178**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**PATRICIA M. LACY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Defendant Patricia M. Lacy appeals the denial of her motion to suppress following her conviction for possession of a controlled substance (methamphetamine), contrary to NMSA 1978, Section 30-31-23(A)(2011). Defendant argues that the district court erred by denying her motion to suppress because she was the subject of an unlawful search and seizure. Defendant raises the following issues on appeal: (1) whether the district court erred in determining that Defendant was not detained until she

was directed out of her vehicle; and (2) whether reasonable suspicion justified Defendant's detention. Because we conclude that the officer lacked reasonable suspicion to justify Defendant's seizure, we reverse the district court's denial of her motion to suppress the methamphetamine.

## Background

{2}    Late one evening, Las Cruces Police Department Officer Nathan Krause was dispatched to investigate a call regarding a suspicious vehicle parked near an apartment complex. The caller reported that the vehicle did not belong to anyone living in the complex and had been parked at the location for approximately an hour. According to Officer Krause, the police had received a high volume of calls involving domestic and other matters at the complex. The police had also received information during a police briefing that an individual was selling narcotics in an alley near the location, although he did not know where the information came from, when that information was received in relation to the call in this case, and did not remember a specific person who provided the information.

{3}    Officer Krause arrived at the apartment complex in his marked patrol unit and saw a vehicle matching the description of the vehicle provided by the caller. The vehicle was backed into a parking spot at the apartment complex and was facing the street. Officer Krause angled his patrol car toward the vehicle and illuminated it with his headlights and spotlight. However, he did not park directly in front of the vehicle, nor did he activate his emergency lights. Officer Krause saw a female—later identified as Defendant—seated in the driver's seat. Defendant looked at Officer Krause and quickly looked back down and began making "very quick" movements around the center console and her right leg area. Officer Krause found Defendant's movements consistent with someone trying to conceal or hide something from him.

{4}    Officer Krause, who was displaying his badge, walked to the passenger side of the vehicle and made contact with Defendant. Officer Krause, in a "conversational" tone, asked Defendant what she was doing at the location and whether she lived in the area. Defendant responded that she was getting ready to meet a friend at one of the apartments, and that she was using her phone to catch up on Facebook. Defendant did not make eye contact with Officer Krause and appeared nervous. While speaking with Defendant, Officer Krause used his flashlight to scan the interior of the vehicle. While doing so, he saw a butane lighter on Defendant's lap, which, based on his training and experience, was commonly used to heat up spoons to ingest illegal narcotics. Officer Krause again asked Defendant what she was doing parked at the location and informed her of the call dispatch had received. Defendant repeated that she was getting ready to meet a friend, and that she was catching up on Facebook.

{5}    Officer Krause decided to ask Defendant to step out of the vehicle and investigate her further because "she didn't really have a good answer." Prior to doing so, Officer Krause asked Defendant for her driver's license "to identify her [and] to see . . . who the vehicle came back to." Defendant replied that she did not have a driver's

license. Officer Krause responded, "You obviously drove over here, where is your driver's license?" to which Defendant responded, "I just don't have it with me, I can give you my name and date of birth."

**{6}** Officer Krause became "more suspicious," and concerned because he did not know if there were weapons inside the vehicle. Officer Krause began walking in front of Defendant's vehicle towards the driver's side door, and while doing so saw Defendant reach down towards the center console and her right leg area. Officer Krause asked Defendant to step out of her vehicle for a weapons pat down. Another officer, who had been talking with the caller and learned during that conversation that gas siphoning had occurred in the area, arrived and removed a glass pipe from Defendant's pocket during a weapons pat down. Additionally, the officers later found a small bag of what they suspected to be methamphetamine on the ground near Defendant's vehicle.

**{7}** Defendant was charged with possession of a controlled substance and possession of drug paraphernalia based on the glass pipe. Defendant filed a motion to suppress the methamphetamine and glass pipe. Following an evidentiary hearing, the district court denied Defendant's motion in part as to the methamphetamine, holding that Officer Krause had reasonable suspicion to detain Defendant, and granted in part, as to the pipe. Defendant now appeals.

## DISCUSSION

### Seizure

**{8}** The Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution prohibit "unreasonable" seizures without a warrant. In determining whether a defendant was unreasonably seized, "our first inquiry is at what moment [the d]efendant was seized[.]" *State v. Harbison*, 2007-NMSC-016, ¶ 10, 141 N.M. 392, 156 P.3d 30. "The point at which the seizure occurs is pivotal because it determines the point in time the police must have reasonable suspicion to conduct an investigatory stop." *Id.* "Not all police-citizen encounters are seizures . . . . Consensual encounters, those in which a citizen feels free to leave, generally do not implicate constitutional protections." *State v. Williams*, 2006-NMCA-062, ¶ 9, 139 N.M. 578, 136 P.3d 579. "However, if an officer conveys a message that an individual is not free to walk away, by either physical force or a showing of authority, the encounter becomes a seizure under the Fourth Amendment." *State v. Gutierrez*, 2008-NMCA-015, ¶ 9, 143 N.M. 522, 177 P.3d 1096 (internal quotation marks and citation omitted). "The test for determining if a police-citizen encounter is consensual depends on whether, under the totality of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* ¶ 10 (internal quotation marks and citation omitted). "Since the facts here are undisputed, we review only the district court's application of law to those facts." *Williams*, 2006-NMCA-062, ¶ 6. "The question of whether the circumstances would have caused a reasonable person to

believe he or she was not free to decline the officers' requests is a legal inquiry, which we review de novo." *State v. Soto*, 2008-NMCA-032, ¶ 6, 143 N.M. 631, 179 P.3d 1239.

**{9}** Defendant argues she was seized when Officer Krause asked her for her driver's license. We agree. The facts of this case are not materially different from *City of Roswell v. Hudson*, 2007-NMCA-034, 141 N.M. 261, 154 P.3d 76. In *Hudson*, a caller reported that a vehicle, which did not belong to anyone in the neighborhood, had been parked in the area for thirty minutes late at night. *Id.* ¶ 2. The neighborhood was located in an area that had a history of burglaries. *Id.* ¶ 3. The responding officer parked behind the vehicle in a marked patrol unit. *Id.* ¶¶ 4, 13. The officer shined a spotlight into the cabin of the vehicle, approached, and questioned the defendant and the driver about their reasons for being parked in the neighborhood. *Id.* ¶¶ 4-5. When the driver responded that he lived at the house they were parked in front of, the officer asked for his identification to verify his address. *Id.* ¶ 5. After discovering that the address on the license did not match the house's address, the officer then asked the defendant for his identification. *Id.* The defendant provided his name and address but refused to provide his identification. *Id.* After the defendant twice more refused the officer's request to provide identification, the officer arrested the defendant for obstruction. *Id.* ¶¶ 5-6.

**{10}** We held that, under the totality of the circumstances, "[a] police car coming from behind, stopping, and shining its spotlight at the parked vehicle late at night, constituted a show of police authority." *Id.* ¶ 13. We further held that the officer's acts of walking up to the vehicle, identifying himself as a police officer, asking the occupants why they were parked on the street, and demanding identification from the driver and the defendant demonstrated the officer's authority and conveyed the message that compliance with his request was mandatory. *Id.* ¶ 13. After analyzing the factual context with existing precedent, we concluded that under the "totality of the circumstances, when [the officer] demanded identification from [the d]efendant, he was detained in such a way that a reasonable person would not feel free to leave[,]" and held that "[the d]efendant was seized under the Fourth Amendment when [the officer] demanded that [the d]efendant produce identification." *Id.* ¶¶ 13-14.

**{11}** Likewise, in the instant case, we conclude Defendant was seized when Officer Krause asked for her driver's license. Similar to *Hudson*, Defendant was sitting in a parked vehicle late at night when Officer Krause arrived in his patrol unit, angled his patrol unit towards Defendant's vehicle, and shined both his headlights and spotlight at the vehicle. This constituted a show of authority. *See id.* ¶ 13. Officer Krause then walked up to the passenger side window, displaying his badge of office, scanned the interior of Defendant's vehicle with a flashlight, and repeatedly questioned Defendant about her purpose for being in the area, further demonstrating his authority as did the officer in *Hudson. See id.* After this demonstration of authority, Officer Krause asked Defendant for her driver's license. Notwithstanding Officer Krause's initial "conversational" tone, these circumstances conveyed the message that compliance with his request was mandatory, as further evidenced by the accusatory language of Officer Krause's second request for Defendant's license: "You obviously drove over here, where is your driver's license?" As the State observed below at the suppression

hearing, "Such a question would reasonably connote that an answer was mandatory." *See State v. Jason L.*, 2000-NMSC-018, ¶ 14, 129 N.M. 119, 2 P.3d 856 (noting that while a police officer does not need justification to approach a person and ask questions, the officer may not convey the message that compliance with his request is required). Given the totality of the circumstances, we conclude that Defendant was detained when Officer Krause demanded identification from her.

**{12}** The State argues that the absence of an "evidentiary record as well as from the district court's findings of any indication that [Officer] Krause used language or a tone of voice indicating that compliance with his request for identification and documentation might be compelled, the inference on appeal is that he did not convey such a message." In support of this argument, the State contends Defendant did not regard the request for her license or identification as mandatory because Defendant "offered to instead to tell [Officer] Krause her name and date of birth" and the officer "did not pursue the absence of such materials any further." We are unpersuaded for a number of reasons. First, the State conceded in its response to Defendant's motion to suppress that Officer Krause's second request for Defendant's license "would reasonably connote that an answer was mandatory." Second, our inquiry is an objective one. As we explained above, a reasonable person under the circumstances would interpret Officer Krause's request as one requiring compliance. The fact that Defendant did not produce her license, even though her identification card was later found in her vehicle, does not convince us otherwise. Defendant offering alternative identifying information only buttresses our conclusion. Lastly, that Officer Krause did not pursue Defendant's license further is inconsequential to our analysis, Officer Krause's show of authority to this point was sufficient to establish that compliance with his request was mandatory.

**{13}** To the extent the State distinguishes *Williams* by questioning Defendant's status as a driver, we are unpersuaded because our holding is not based on Defendant's status as a driver but instead on the totality of the circumstances as we set forth above and previously discussed in *Hudson*.

**Reasonable Suspicion**

**{14}** Having concluded that Defendant was seized at the moment Officer Krause repeatedly asked Defendant for her driver's license, we next determine whether the seizure was lawful. "Investigatory detention is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken." *State v. Rivas*, 2007-NMCA-020, ¶ 7, 141 N.M. 87, 150 P.3d 1037 (internal quotation marks and citation omitted). "An officer's reasonable suspicion must be a particularized suspicion, based on all the circumstances, that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Yazzie*, 2016-NMSC-026, ¶ 20, 376 P.3d 858 (alteration, internal quotation marks, and citation omitted). "Reasonable suspicion must consist of more than an officer's hunch that something is amiss; it requires objectively reasonable indications of criminal activity." *State v. Leyva*, 2011-NMSC-009, ¶ 23, 149 N.M. 435, 250 P.3d 861. "Whether a police officer acts with a reasonable suspicion is judged by an objective standard: Would the facts available to the officer warrant the

officer, as a person of reasonable caution, to believe the action taken was appropriate?" *Hudson*, 2007-NMCA-034, ¶ 15 (internal quotation marks and citation omitted). "Questions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether the detention was justified." *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted).

**{15}** Here, the State contends that Officer Krause had reasonable suspicion to detain Defendant for the following reasons: (1) a caller reported that Defendant was parked in front of his business and did not belong to anyone at the adjacent apartment complex, (2) Defendant made quick movements when Officer Krause approached her vehicle, (3) Defendant appeared nervous, (4) Defendant had a specific type of butane lighter associated with drug use, and (5) Defendant was in a high-crime area. We conclude that the totality of the circumstances fails to establish reasonable suspicion that Defendant was breaking or had broken the law when Officer Krause asked for her driver's license.

**{16}** Regarding Officer Krause's suspicion that Defendant was trespassing on the caller's business, we note that, aside from his testimony concerning the dispatch call, there was no evidence produced indicating that Defendant was parked illegally. Although testimony at the suppression hearing differed as to exactly where Defendant was parked, the district court found that the vehicle was outside of the apartment complex. Given the evidence and the district court's findings, any possible concern that Defendant was trespassing was allayed when Officer Krause arrived at the scene and discovered that Defendant was not parked in front of the business.

**{17}** Next, although Officer Krause may have subjectively viewed Defendant's "very quick" movements as suspicious, it was objectively reasonable for a person to make similar movements under the circumstances. *See State v. Gutierrez*, 2008-NMCA-015, ¶ 16, 143 N.M. 522, 177 P.3d 1096 (distinguishing between the officer's subjective view of the defendant's actions and an objectively reasonable reaction to the circumstances). We note that, although "movements by the vehicle's occupants, consistent with hiding an object, generally give rise to reasonable safety concerns[,]" *Leyva*, 2011-NMSC-009, ¶ 25, Officer Krause did not testify that he was concerned for officer safety at that time. Prior to contact it is unclear that Defendant had any indication that she was being approached by police. Defendant's car was approached late at night and illuminated by both headlights and a spotlight. Officer Krause was at least partially silhouetted when he approached the Defendant's vehicle and saw Defendant make the "very quick" movements. At that point, Officer Krause did not have his emergency lights engaged and he had yet to introduce himself as an officer. Under these circumstances, it is not unreasonable for a person to move when her vehicle is suddenly illuminated and approached by a partially silhouetted figure without any indication that he was an officer.

**{18}** With regard to Defendant's nervousness, we note that "we have never adopted a rule equating simple nervousness with reasonable suspicion[.]" *State v. Neal*, 2007-NMSC-043, ¶ 29, 142 N.M. 176, 164 P.3d 57 (internal quotation marks and citation

omitted). As discussed above, the record reveals that Officer Krause's questioning was accusatory and repetitive. "[M]ost citizens[,] whether innocent or guilty, when confronted by a law enforcement officer who asks them potentially incriminating questions are likely to exhibit some signs of nervousness." *Id.* (internal quotation marks and citation omitted); *cf. State v. Vandenberg*, 2003-NMSC-030, ¶ 31, 134 N.M. 566, 81 P.3d 19 (stating that "it is not the degree of nervousness that allows the officer to pat a defendant down, but instead it is the articulation by the officer of specific reasons why the nervousness displayed by the defendant caused the officer to reasonably believe that his or her safety would be compromised" (internal quotation marks and citation omitted)). Nor was there any indication that Defendant's responses to Officer Krause's questioning were inconsistent or evasive. Thus, we are unpersuaded that Defendant's nervousness is representative of anything other than a natural reaction to Officer Krause's accusatory and repetitive questioning.

**{19}**   Officer Krause also identified a particular type of lighter in Defendant's lap, which he understood through his training and experience to be consistent with narcotics use. Although deference is given to the training and experience of the officer when evaluating particularized and objective indicia of criminal activity, said training and experience is not alone dispositive of objective reasonableness. *See Neal*, 2007-NMSC-043, ¶ 31 (concluding that even when indulging officer's inferences, detention was not supported by reasonable suspicion given the defendant's innocent conduct and surrounding circumstances). Officer Krause did not testify to any other observation that would indicate drug use other than the presence of a lighter. Even when indulging Officer Krause's inference regarding the lighter, Defendant's possession of it, alone, does not raise an objectively reasonable suspicion given her otherwise innocent conduct.

**{20}**   Likewise, the fact that Defendant was found in a high crime area is not, alone, sufficient to establish reasonable suspicion. *See Hudson*, 2007-NMCA-037, ¶ 19 ("A general suspicion arising from the fact that a car in which Defendant was a passenger was parked for thirty minutes on a street late at night in a neighborhood where recent burglaries, but none that night, had occurred does not give rise to an individualized suspicion that Defendant was committing or had committed a crime."). Our search and seizure jurisprudence addressing "high-crime" areas requires that such a fact be coupled with other factual occurrences, such as flight when noticing police, which we do not have here. *See Harbison*, 2007-NMSC-016, ¶¶ 17, 18. We also note that although the caller informed another officer of gas siphoning taking place in the area, this information was not provided to Officer Krause before the seizure occurred and therefore cannot serve as basis for his reasonable suspicion.

**{21}**   Even when viewed together and indulging factual inferences drawn by Officer Krause, the facts relied upon by the State do not constitute the type of individualized, specific, articulable circumstances necessary to substantiate reasonable suspicion. Evidence of Defendant's behavior, answers to questioning, and presence in a high-crime area do not amount to criminal activity, nor do they indicate future criminal activity. Defendant's responses to questioning were consistent, she was not evasive,

and there was no indication of drug use aside from the presence of a lighter. Defendant did not attempt to flee when she saw Officer Kraus and her "very quick" movements occurred without much, if any, indication that she was being approached by the police. The totality of Defendant's conduct and the surrounding circumstances viewed together and indulging the factual inferences drawn by Officer Krause, do not constitute a reasonable individualized suspicion that Defendant was or had been involved in criminal activity, when Officer Krause detained her. *See Hudson*, 2007-NMCA-034, ¶ 19 (noting that "[a] general suspicion arising from the fact that a car in which [the d]efendant was a passenger was parked for thirty minutes on a street late at night in a neighborhood where recent burglaries, but none that night, had occurred does not give rise to an individualized suspicion that [the d]efendant was committing or had committed a crime"). Accordingly, we hold that Defendant's seizure was not supported by reasonable suspicion.

**{22}** Because we hold that Defendant was unlawfully seized when repeatedly asked for her driver's license, evidence obtained thereafter was inadmissible and should have been suppressed. *See State v. Bell*, 2015-NMCA-028, ¶ 19, 345 P.3d 342 (stating that it is "settled law that evidence discovered as a result of the exploitation of an illegal seizure must be suppressed unless it has been purged of its primary taint." (internal quotation marks and citation omitted)). Accordingly, we conclude that the district court erred in failing to suppress evidence obtained after the unlawful seizure.

**CONCLUSION**

**{23}** For the foregoing reasons, we reverse the district court's denial of Defendant's motion to suppress the methamphetamine and remand for further proceedings consistent with this opinion.

**{24}  IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Judge**

**JULIE J. VARGAS, Judge**