1997–NMCA–013

934 P.2d 282

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ronald Ray WALTERS, Defendant–
Appellant.**

**No. 16411.**

Court of Appeals of New Mexico.

Dec. 30, 1996.

Certiorari Denied Feb. 11, 1997.

Tom Udall, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Glenn T. Ellington, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

## OPINION

BOSSON, Judge.

1. Defendant Ronald Walters appeals his conviction for aggravated driving while intoxicated (DWI) for refusing to take a blood alcohol test as requested by a New Mexico state police officer. *See* NMSA 1978, § 66–8–102(D)(3), (E) (Repl.Pamp.1994). Defendant moved unsuccessfully to suppress incriminating evidence of DWI which resulted from his encounter with the police, arguing that the stop of his vehicle constituted an

unconstitutional seizure. Defendant raises a single issue in this appeal: Whether the trial court erred in characterizing his contact with the officer as a community caretaker encounter and not a seizure, which did not implicate Fourth Amendment protections. We agree with the court below and affirm its denial of Defendant's motion to suppress.

*FACTUAL AND PROCEDURAL BACKGROUND*

2. On January 2, 1994, just before midnight, Officer Charles Devine of the New Mexico State Police was on regular patrol when he observed Defendant's car turn east from U.S. 54 onto Dog Ranch Road in Alamogordo. Dog Ranch Road is about two to three miles long and connects U.S. 54 and Appler Road. It is an unlit, rural road with the surface changing from pavement to dirt. Officer Devine decided to follow the car, basing his decision on the lateness of the hour and on his knowledge, gained from police training and experience, that intoxicated drivers frequently take rural roads to avoid the police. Officer Devine has been a New Mexico state police officer for seven years and, on average, will handle ten DWI investigations in a five-day period.

3. The posted speed limit on Dog Ranch Road was 35 miles per hour. Officer Devine testified that he drove at 45 miles an hour until he caught up with Defendant and then paced his car with Defendant's, traveling at about 30 miles per hour and maintaining a constant distance of two to three car lengths behind. While following Defendant, Officer Devine observed nothing about Defendant's driving to indicate he was intoxicated or violating the law in any other way.

4. Defendant testified that he saw in his rear view mirror a car approach quickly and that the car lights appeared to shift from side to side on the dirt portion of the road creating the impression that the car was weaving. According to the officer, however, there was nothing that would have made his car appear to weave other than movement that naturally results from driving on a dirt road. Defendant acknowledged he could not see that the car behind him was a police vehicle.

5. Defendant testified that he thought the other driver "wanted the road" and might be impaired, and therefore he pulled over quickly and came to a stop on the side of the road. The officer stated that at the place Defendant pulled over, Dog Ranch Road was about thirty feet wide and that there was room for another car to pass without Defendant pulling over and stopping. Also, Defendant was only about one hundred feet from the intersection of Dog Ranch Road and Appler Road when he stopped. Because there were no homes or driveways in the area to explain the abrupt stop, Officer Devine decided to pull over and inquire whether there was anything wrong with the driver or his car. He stopped his marked patrol car twenty to twenty-five feet behind Defendant's car and turned on his emergency lights. Officer Devine said this was standard practice so that a driver would not be apprehensive about being approached at night and to ensure that his patrol car would be visible to traffic and to other police officers.

6. Officer Devine approached Defendant and asked him why he had stopped. Defendant responded that he wanted to see who was following him. When Defendant spoke, Officer Devine detected the odor of alcohol on his breath, and he then asked Defendant to perform field sobriety tests. Based on Defendant's performance on the tests, Officer Devine arrested Defendant and took him to the Alamogordo Department of Public Safety where Defendant refused to take a breath test.

7. Defendant filed a motion to suppress in magistrate court which was denied and after a bench trial Defendant was convicted of aggravated DWI. Defendant then appealed de novo to the district court, where he filed a motion to suppress which was denied. Thereafter, Defendant was tried and convicted of aggravated DWI. Defendant appeals his conviction, arguing that his motion to suppress should have been granted.

*STANDARD OF REVIEW*

8. Whether an individual has been seized in violation of the Fourth Amendment is a mixed question of law and fact. *State v. Lopez*, 109 N.M. 169, 170, 783 P.2d 479, 480 (Ct.App.), *cert. quashed*, 109 N.M. 131, 782

P.2d 384 (1989); *see State v. Reynolds,* 119 N.M. 383, 384, 890 P.2d 1315, 1316 (1995); *State v. Attaway,* 117 N.M. 141, 144–45, 870 P.2d 103, 106–07 (1994). Seizure under the Constitution is a question of law, but it is a question of fact whether a person was accosted and restrained in such a manner that a reasonable person in the same circumstances would believe he was not free to leave. *Lopez,* 109 N.M. at 170, 783 P.2d at 480. A de novo review is given to the district court's application of the law to the facts. *Attaway,* 117 N.M. at 145, 870 P.2d at 107. Factual questions are reviewed on appeal for substantial evidence, viewing the facts in the light most favorable to the prevailing party. *Lopez,* 109 N.M. at 171, 783 P.2d at 481. The question for the reviewing court is whether the trial court's result is supported by substantial evidence, not whether the trial court could have reached a different conclusion. *Id.* When the trial court's ruling is supported by substantial evidence, this Court will not disturb the denial of a motion to suppress unless it appears that the ruling was erroneously premised on the law or the facts *State v. Shaw,* 115 N.M. 174, 176, 848 P.2d 1101, 1103 (Ct.App.1993).

9. Although Defendant asserts that he was subjected to an unreasonable seizure under both the state and federal constitutions, he advances no separate analysis under the New Mexico Constitution, nor does he argue that the state constitution affords any greater protection in this respect than the United States Constitution. Defendant makes a passing reference to Article II, Section 10 of the New Mexico Constitution, but his argument relies on federal law. Accordingly, we limit our analysis to the Fourth Amendment. *See State v. Wright,* 116 N.M. 832, 834, 867 P.2d 1214, 1216 (Ct.App.1993) (when defendant fails to present argument showing that state constitution provides greater protection than federal constitution, we assume protection is the same under both), *cert. denied,* 117 N.M. 121, 869 P.2d 820 (1994).

10. The trial court denied Defendant's motion to suppress, finding that the "initial contact between Officer Devine and Defendant was in the officer's public caretak-

er capacity," which did not implicate the Fourth Amendment. Not every encounter between a police officer and an individual is a seizure subject to Fourth Amendment scrutiny. Case law recognizes three types of police-citizen encounters: (1) arrests, which require probable cause, (2) investigatory stops, which require reasonable suspicion, and (3) community caretaking encounters. *Lopez,* 109 N.M. at 171, 783 P.2d at 481. The first two are seizures, invoking constitutional protections. *See id.* The third is a voluntary encounter, involving no coercion or detention; it thus falls outside the Fourth Amendment. *See id; Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973) (in some circumstances, without reasonable suspicion of criminal activity, police may intrude upon an individual's privacy to carry out community caretaker functions that further public safety).

11. Defendant maintains that his encounter with Officer Devine could not have been a community caretaker stop because he did not pull over voluntarily but only in response to being followed. Defendant argues that he felt as compelled to pull over by the manner in which he was followed as if the officer had activated his emergency lights while following him, and that his encounter with the officer amounted to an investigatory stop requiring reasonable suspicion of criminal activity. Because Officer Devine had no reasonable suspicion of criminal activity to justify an investigatory stop, Defendant protests that the resulting evidence should have been suppressed. We do not agree.

12. The test for determining if a police-citizen encounter is consensual depends on whether, under the totality of the circumstances surrounding the encounter, "the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick,* 501 U.S. 429, 439, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991). The test is an objective one based upon a reasonable person standard, not the subjective perceptions of the particular individual. *See* 4 Wayne R. LaFave, *Search and Seizure*

§ 9.3(a), at 92 (3d ed. 1996). The test presumes an innocent reasonable person. *Bostick*, 501 U.S. at 438, 111 S.Ct. at 2388. In making this determination, the court should consider the sequence of the officer's actions and how a reasonable person would perceive those actions. *State v. Baldonado*, 115 N.M. 106, 110, 847 P.2d 751, 755 (Ct.App.1992), *cert. denied*, 115 N.M. 145, 848 P.2d 531 (1993). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). To ascertain whether the encounter between Officer Devine and Defendant rose to the level of a seizure under the Fourth Amendment, we analyze the sequence of events leading up to Defendant pulling over and thereafter, including Officer Devine's use of emergency lights and his verbal exchange with Defendant.

13. The United States Supreme Court in *Michigan v. Chesternut*, 486 U.S. 567, 569, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565 (1988) examined whether an investigatory pursuit by police constituted a seizure under the Fourth Amendment. Defendant started to run when he saw a police car on routine patrol. *Id.* The police followed him in the patrol car and observed him discarding packets as he ran. *Id.* Police retrieved the packets, suspecting that they contained illegal narcotics, and arrested the defendant for possession. *Id.* The lower courts suppressed the packets, ruling that the defendant had been unlawfully seized under the Fourth Amendment because his freedom had been restricted as soon as the officers began to follow him. *Id.* at 570, 108 S.Ct. at 1977. The Supreme Court reversed, finding that there had been no illegal seizure because the conduct of the police would not have conveyed to a reasonable person an attempt to limit his freedom of movement. *Id.* at 575, 108 S.Ct. at 1980. Although recognizing that the police conduct may have been somewhat intimidating, the Court concluded, "[w]ithout more, the police conduct here—a brief acceleration to catch up with respondent, followed by a short drive alongside him—was not 'so intimidating' that respondent could reason-

ably have believed that he was not free to disregard the police presence and go about his business." *Id.* at 576, 108 S.Ct. at 1981. The Court noted that the officers did not activate a siren or flashing lights, command the defendant to stop, display any weapon, or operate their car in an aggressive manner to control the direction or speed of the defendant's movement. *Id.* at 575, 108 S.Ct. at 1980.

14. Similarly, in *United States v. Langston*, 970 F.2d 692 (10th Cir.), *certs. denied*, 506 U.S. 965, 979, 986, 113 S.Ct. 439, 479, 495, 121 L.Ed.2d 358, 384, 433 (1992), *and cert. denied*, 507 U.S. 1040, 113 S.Ct. 1872, 123 L.Ed.2d 491 (1993), a police-citizen encounter was found to be consensual because the driver had pulled over of his own accord. The state police officer followed the vehicle, then drove alongside and made deliberate eye contact with the driver. *Id.* at 697. The driver pulled over. *Id.* The court concluded that no seizure had occurred, observing that:

a driver might be somewhat nervous about, or even intimidated by, being followed on the highway by a police car, or by observing a police officer driving alongside on a two-lane highway and staring. However, the officer's actions did not indicate that [the driver] was not free to continue driving.

*Id.* at 698 n. 3.

15. The encounter between Officer Devine and Defendant does not reach even the level of subtle manipulation that arguably occurred in *Chesternut* and *Langston*. In this case, there was no show of authority to bring about a stop; Defendant was not even aware he was being followed by the police. Officer Devine did not use physical force to restrain Defendant's liberty. The trial court found that Officer Devine was following two to three car lengths behind when Defendant pulled over and came to a complete stop. Although Defendant decided to stop, there was evidence in the record that he was free to continue driving. *See also People v. Long*, 99 Ill.2d 219, 75 Ill.Dec. 693, 698, 457 N.E.2d 1252, 1257 (1983) (no stop when officer followed defendant's truck, without activating the lights or siren on his patrol car, and

defendant stopped voluntarily); *People v. Scott*, 249 Ill.App.3d 597, 189 Ill.Dec. 108, 113, 619 N.E.2d 809, 814 (1993) (when officer simply follows a car without a display of authority, and the driver voluntarily pulls over and stops, no Fourth Amendment seizure occurs); *State v. Foster*, 269 S.C. 373, 237 S.E.2d 589, 592 (1977) (no seizure under Fourth Amendment when driver stopped car without prompting by law enforcement officers).

16. In light of the foregoing case law, we determine that under the circumstances of this case, the trial court could reasonably conclude that Defendant was not seized as a consequence of Officer Devine following him on Dog Ranch Road. The trial court could reasonably determine that Defendant was under no official compulsion to pull over and therefore could have continued driving.

17. Defendant chose not to continue driving and pulled over. Officer Devine stopped behind Defendant's car and turned on his emergency lights. Defendant contends that he was seized at this point and cites the following circumstances in support of his argument: the police car's flashing lights, the lateness of the hour, the deserted road, the officer's suspicious questions, and Defendant's subjective belief that he was not free to go. We do not agree.

18. Both our courts and the federal courts have held that a police officer may approach an individual, ask questions, and request identification without the encounter becoming a seizure under the Fourth Amendment. *Bostick*, 501 U.S. at 434, 111 S.Ct. at 2386; *Reynolds*, 119 N.M. at 384, 890 P.2d at 1316; *see also Baldonado*, 115 N.M. at 109, 847 P.2d at 754. *See generally* LaFave, *supra*, § 9.3(a) (discussing police-citizen encounters that are not subject to Fourth Amendment restrictions). On the other hand, this Court has noted that a seizure might be indicated if an encounter includes some of the following: " 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *Lopez*, 109 N.M. at 170, 783 P.2d at 480 (quoting guidelines from *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). None of the intimidating displays of authority described in *Lopez* were present in this case. Officer Devine was alone, he did not block Defendant's car to prevent him from leaving nor did he display a weapon, and he approached Defendant in a manner that was neutral and inquiring, rather than threatening.

19. Defendant argues that the flashing lights constituted such a convincing show of police authority that a reasonable person would have concluded that he was not free to leave the officer's presence. In support of his position, Defendant cites the following language from *Baldonado*: "On the other hand, we find it hard to conceive of a situation where officers activate their emergency lights to investigate a suspicious situation and approach the situation with many accusatory questions in which a reasonable stopped motorist would feel free to leave." 115 N.M. at 109, 847 P.2d at 754.

20. Based on the evidence presented at the suppression hearing, we believe the trial court could reasonably have decided that Officer Devine was not conducting a criminal investigation at the point when he activated his lights and approached Defendant. Similarly, we believe that his single inquiry of Defendant as to why he had stopped does not compare to the "many accusatory questions" referred to in *Baldonado*. We consider another passage from *Baldonado* to be more pertinent to this case: "We can conceive of many situations in which people in stopped cars approached by officers flashing their lights would be free to leave because the officers would be simply communicating with them to ascertain that they are not in trouble." *Id.* For example, *Baldonado* mentions an officer putting on the emergency lights for highway safety and to avoid alarming the stopped driver. Officer Devine testified that he turned on his lights for these very reasons. Both cars were parked on the side of an unlit road at night, and the emergency lights identified Officer Devine as a police officer to the driver of the parked car.

21. The trial court relied on *State v. Half-mann*, 518 N.W.2d 729 (N.D.1994), a case that is factually similar. In *Halfmann*, a highway patrol officer was driving behind the defendant on a country road in the early morning hours when the driver pulled over and stopped. *Id.* at 730. The officer parked behind the car, turned on his amber lights, and spoke to the defendant. *Id.* Following that conversation, the officer arrested the defendant for driving under the influence of alcohol. *Id.* The court found that there had been no seizure and that the contact between the officer and defendant fell within the community caretaker category. *Id.* The court described the officer's use of his lights as a "procedural precaution," not intended to inhibit the defendant's liberty. *Id.* at 731; *see also State v. Hanson*, 504 N.W.2d 219, 220 (Minn.1993) (although flashing lights may be used as a show of authority, they also perform other functions, including warning other motorists to be careful).

22. In community caretaker cases, the reasonableness of the police action is determined by balancing the public interest furthered by the police conduct against the degree of intrusion upon the privacy of a citizen. *Reynolds*, 119 N.M. at 387–88, 890 P.2d at 1319–20. Prohibiting the use of emergency lights in these situations would require an officer to approach a stopped car at night without an immediate means of conveying that he presents no threat to the occupant of the car. Under these circumstances, the flashing emergency lights identify the officer just as his uniform and marked patrol car do. We are loathe to discourage community caretaker stops or to make them hazardous for motorists or the police.

23. Defendant maintains that this case differs from the typical caretaker stop in which the car is already stopped, as in *Baldonado*, or in which an officer observes a safety concern, as in *Reynolds*. He points out that Officer Devine followed Defendant's car for two miles without observing any problem with Defendant's driving or with his car. Defendant argues that once he realized that the driver who had been following him was a police officer, he felt that he had been "targeted" by the officer from the beginning of the encounter and did not feel free to go. Defendant stated that he did not believe that the officer had stopped to assist him.

24. The difficulty with this argument is that it is premised on Defendant's view of the facts that the officer engaged in an aggressive and intimidating pursuit which practically forced Defendant to the side of the road. At the suppression hearing, Defendant and Officer Devine did not agree on the manner in which Defendant was followed, and the trial court did not find the officer's conduct to be as Defendant characterized it. The trial court heard both accounts and accepted the version offered by the officer. *See State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988) (fact finder may reject defendant's version of events). When the testimony of the witnesses differs as to the facts, it is for the trial court to evaluate the credibility of the evidence and resolve the conflicts. *State v. Affsprung*, 115 N.M. 546, 547, 854 P.2d 873, 874 (Ct.App.), *cert. denied*, 115 N.M. 545, 854 P.2d 872 (1993).

25. The trial court observed that if Officer Devine's attention had not been initially directed toward Defendant while the officer was acting in an investigatory capacity, this case would clearly fall within the community caretaker function of the officer. The court concluded that although the officer was acting in a dual capacity, first as a criminal investigator and then as a public caretaker, the initial contact between Officer Devine and Defendant was in the caretaker capacity. We agree with that conclusion.

26. Under the record before us, the trial court could reasonably have found that the officer's act of stopping and turning on his emergency lights after Defendant had pulled off the road did not convert the situation into a seizure. A caretaking encounter, however, does not prevent an officer from making observations that lead to reasonable suspicion. *See State v. Langseth*, 492 N.W.2d 298, 300 (N.D.1992). After Officer Devine spoke to Defendant and detected the odor of alcohol, he had reasonable suspicion to investigate further. We conclude that no seizure occurred before the officer spoke to Defendant.

27. Viewing the totality of the circumstances surrounding the entire encounter between the officer and Defendant, from the time Officer Devine began to follow Defendant's car until he began talking with him, we are persuaded that Defendant was not subjected to a Fourth Amendment seizure. Applying a de novo review to the trial court's application of law to the facts, the individual components of the encounter do not rise to the level of a seizure; nor, when assessed collectively, do they combine to constitute a seizure.

## CONCLUSION

28. Accordingly, we affirm the judgment and sentence entered below.

29. IT IS SO ORDERED.

DONNELLY and BUSTAMANTE, JJ., concur.