This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**CITY OF FARMINGTON,**

    Plaintiff-Appellee,

v.                                                                              **No. 35,431**

**BILL SCOTT,**

    Defendant-Appellant,

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Judge**

Office of the City Attorney
Russell A. Frost
Farmington, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VIGIL, Judge.**

{1}    Defendant challenges the denial of a motion to suppress. We previously issued

a memorandum opinion upholding the district court's determination, and Defendant has filed a motion for rehearing. It is ordered that the memorandum opinion filed herein on January 23, 2017 is withdrawn, the following opinion substituted in its place, and Defendant's motion for rehearing is denied.

{2} The relevant background information was previously set forth at length, and we will avoid undue reiteration here. To briefly summarize, police officers initiated a traffic stop and detained Defendant based upon an eyewitness report that the perpetrators of an armed robbery had just left the scene in a vehicle with matching license plates. [DS 3; MIO1-2] Defendant does not challenge the validity of the stop. [MIO 13-14] However, he contends that the initial investigatory detention evolved into an impermissible de facto arrest. [MIO 12-15] He further argues that the officers lacked any valid basis for expanding the scope of the inquiry, from the robbery into the ensuing DWI investigation which led to his arrest and conviction. [MIO 7-12] We remain unpersuaded.

{3} As described in the notice of proposed summary disposition, [CN 2-5] the first 35 minutes of the detention, from the initiation of the stop through the detention in the patrol vehicle while officers brought the eyewitness to the scene to facilitate a viewing for purposes of identification, [MIO 12-13] was permissible. Given the government's strong interest in combating violent crime, and given that the officers conducted the

investigation with due diligence, that portion of the encounter cannot be characterized as an impermissible de facto arrest. *See State v. Werner*, 1994-NMSC-025, ¶¶ 14, 17, 20, 117 N.M. 315, 871 P.2d 971 (observing that detention in a patrol car does not constitute an arrest per se, that diligence is key, and noting "the diligence with which the police pursued the investigation" where "the police promptly brought witnesses to identify [the d]efendant"). *Id.* ¶ 17; *State v. Robbs*, 2006-NMCA-061, ¶¶ 29-30, 139 N.M. 569, 136 P.3d 570 (holding that a thirty-five to forty minute detention while awaiting the arrival of a canine unit was reasonable); *and see generally State v. Skippings*, 2014-NMCA-117, ¶ 14, 338 P.3d 128 (setting forth relevant factors in this context).

{4}      Defendant contends that *Werner* is contraindicative. [Mot. Reh'g at 2-4] He observes that the New Mexico Supreme Court held in that case that the defendant had been subjected to a de facto arrest, where he was held in a patrol vehicle for 45-minutes while officers investigated the theft of a camcorder. *Werner*, 1994-NMSC-025, ¶¶ 19-21. However, the *Werner* Court's ultimate holding turned upon circumstances that are not present in this case. The Supreme Court focused on the fact that the officers "probably had probable cause to arrest" the defendant within fifteen minutes after he was placed in the patrol vehicle, at which point he had already been identified by name and description as well as by two eyewitnesses. *Id.* ¶¶ 18-19.

Instead of formally arresting the defendant at that juncture, the officers "waited at least another half-hour" until yet another eyewitness "showed up and made a further identification[.]" *Id.* ¶ 19. The Supreme Court held that this additional 30-minute detention, "after the police had ample evidence to confirm their suspicions," was not "reasonably necessary to diligently investigate . . . and decide either to arrest or release" the defendant; and accordingly, the detention was deemed a de facto arrest. *Id.*[1] In this case, by contrast, we find no indication that similarly unnecessary delays occurred.

{5}     We understand Defendant to contend that the detention should be said to have evolved into a de facto arrest as a consequence of the officers' failure to release him the moment the eyewitness failed to identify him as one of the perpetrators of the armed robbery. [MIO 14] We disagree. After the portion of the investigation associated with the eyewitness concluded, the officers took statements from Defendant

---

[1]Because the State stipulated that it lacked probable cause, the Supreme Court concluded that the detention was impermissible. *Id.* ¶ 19. It is questionable whether the State's stipulation would be given similar effect today. *See State v. Haidle*, 2012-NMSC-033, ¶ 37, 285 P.3d 668 (observing that the appellate courts are not bound by the State's concessions). However, the fact that the district court had granted the *Werner* defendant's motion to suppress, may explain the Supreme Court's seeming rigidity. *See State v. Muniz*, 2003-NMSC-021, ¶ 5, 134 N.M. 152, 74 P.3d 86 (explaining that the Court had "a duty" to consider an issue, notwithstanding the State's concession, "because we must affirm the district court if its decision was correct"), *superseded by statute on other grounds as recognized by State v. Jones*, 2010-NMSC-012, ¶ 19, 148 N.M. 1, 229 P.3d.474.

4

and his passenger. [MIO 13] That process appears to have taken roughly ten minutes. [MIO 13] In light of the fact that Defendant's vehicle had been placed at the scene at the time of the robbery, and given that Defendant witnessed the incident, [MIO 2] the officers' decision to take his statement and the statement of his passenger was not unreasonable. *See generally State v. Funderburg*, 2008-NMSC-026, ¶ 16, 144 N.M. 37, 183 P.3d 922 ("An officer's continued detention of a suspect may be reasonable if the detention represents a graduated response to the evolving circumstances of the situation.").

{6} Thereafter, the officers briefly discussed the course of the investigation amongst themselves and ultimately decided that Defendant should be released. [MIO 13] We conclude that those few minutes spent in discussion cannot be regarded as unreasonable or impermissible. *Cf. State v. Leyva*, 2011-NMSC-009, ¶ 20, 149 N.M. 435, 250 P.3d 861 (observing, relative to the permissible duration of an investigation, that "a de minimis detention caused by questioning after the completion of the traffic stop is not unreasonable[.]").

{7} Once the officers concluded that there was no basis for further inquiry relative to the armed robbery, they spent a minute or two discussing whether to conduct a DWI investigation, and ultimately electing to proceed. [MIO 13] Defendant characterizes this as a "fishing expedition" and as such, he argues that the ensuing

5

detention should be regarded as an unreasonable de facto arrest, [MIO 14-15] as well as an impermissible expansion of the scope of the investigation. [MIO 7-12] Once again, we disagree.

**{8}** "An officer may expand the scope of a traffic stop beyond the initial reason for the stop and prolong the detention if the driver's responses and the circumstances give rise to a reasonable suspicion that criminal activity unrelated to the stop is afoot." *Leyva,* 2011-NMSC-009. ¶ 23 (internal quotation marks and citation omitted). When the presence of alcohol or its effects becomes apparent, giving rise to a reasonable suspicion of alcohol related criminal activity, the officer may expand the scope of the investigation accordingly. *See State v. Taylor*, 1999-NMCA-022, ¶ 22, 126 N.M. 569, 973 P.2d 246 (observing that the subjects of drugs and alcohol could come within the scope of an investigation if evidence of drugs and alcohol becomes apparent to the investigating officer); *and see generally State v. Williamson*, 2000-NMCA-068, ¶ 8, 129 N.M. 387, 9 P.3d 70 ("[W]hen an officer investigating a traffic violation has a reasonable and articulable suspicion that the driver is impaired, the officer may detain the driver to investigate the officer's suspicions.").

**{9}** In this case, the officers developed reasonable suspicion of DWI after observing Defendant in the course of the preceding investigation into the armed robbery. One of the officers testified that he smelled the odor of alcohol about Defendant, and that

6

Defendant's eyes gave the appearance of intoxication. [MIO 9] Another officer later observed that Defendant's eyes were bloodshot and watery when he removed Defendant's handcuffs. [MIO 10] Although Defendant takes issue with the first officer's lack of specificity relative to the look of Defendant's eyes, [MIO 9] it is doubtful that further specificity should be required. *See generally Leyva*, 2011-NMSC-009, ¶ 23 ("Courts defer to the training and experience of the officer when determining whether particularized and objective indicia of criminal activity existed." (internal quotation marks omitted)). In any event, that officer unequivocally testified that he detected the odor of alcohol about Defendant. [MIO 123] And although Defendant contends that the other officer's observation should be disregarded because the decision had already been made to conduct the DWI investigation, [MIO 10] Defendant's handcuffs would have been removed regardless, and accordingly, the observation about Defendant's bloodshot and watery eyes, made as it was prior to the initiation of the DWI investigation, contributes to the presence of reasonable suspicion. *See generally State v. Muñoz*, 1998-NMCA-140, ¶ 9, 125 N.M. 765, 965 P.2d 349 ("The test [of reasonable suspicion] is an objective one. The subjective belief of the officer does not in itself affect the validity of the stop; it is the evidence known to the officer that counts[.]").

{10}     We understand Defendant to challenge the sufficiency of the officers'

observations to support a reasonable suspicion of DWI. [MIO 8-12] However, we have previously held that officers may expand unrelated traffic stops into DWI investigations when presented with similar indicia of intoxication. *See, e.g., Williamson*, 2000-NMCA-068, ¶¶ 2, 9 (holding that a traffic stop was validly expanded to incorporate a DWI investigation where the officer detected an odor of alcohol and noticed that the driver had bloodshot, watery eyes); *State v. Walters*, 1997-NMCA-013, ¶ 26, 123 N.M. 88, 934 P.2d 282 (holding that an officer developed reasonable suspicion to purse a DWI investigation after detecting the odor of alcohol on the driver's breath). We therefore conclude that the officers had a sufficient basis to embark upon the DWI investigation.

{11}     Accordingly, for the reasons stated in the notice of proposed summary disposition and above, we affirm.

{12}     **IT IS SO ORDERED.**


_____
**MICHAEL E. VIGIL, Judge**


**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**

_____

**M. MONICA ZAMORA, Judge**