This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

No. A-1-CA-36754

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RIKKI RENITA MARTINEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
William O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VARGAS, Judge.**

**{1}** Defendant Rikki Martinez appeals following entry of a conditional plea of guilty to possession of a controlled substance and driving while under the influence of intoxicating liquor (DWI). The sole issue raised on appeal is whether the district court erred in denying her motion to suppress, based on its finding as to when she was seized for purposes of the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. At issue is whether the arresting

officer's use of a spotlight at night to illuminate Defendant's parked car effectuated a seizure. Under the specific circumstances of this case, we conclude that it did not. As such, we affirm the district court's denial of Defendant's motion to suppress.

## DISCUSSION

**{2}**     Both the Fourth Amendment and Article II, Section 10 protect individuals against unreasonable seizures. While both the State and Defendant acknowledge that Defendant was seized by the officer at some point during their encounter, they disagree as to when the seizure occurred. "The point at which seizure occurs is pivotal because it determines the point in time the police must have reasonable suspicion to conduct an investigatory stop." *State v. Harbison*, 2007-NMSC-016, ¶ 10, 141 N.M. 392, 156 P.3d 30. Defendant argues that she was seized without reasonable suspicion the moment the officer illuminated her parked vehicle with his spotlight. The State agrees that the officer lacked reasonable suspicion to justify seizing her at this time, but argues that Defendant was not yet seized for purposes of the Fourth Amendment. The State argues that Defendant was seized after the officer told her she could not go home as she requested. We agree with the district court and the State that the officer's use of his spotlight did not effectuate a seizure under the circumstances of this case.

**{3}**     To determine the constitutional framework for our analysis, we first address Defendant's argument that the New Mexico Constitution provides greater protections than the federal Fourth Amendment under the circumstances presented here. Initially, Defendant raised this argument to the district court only as it related to the alleged pretextual nature of the stop, an issue not raised on appeal. *See State v. Leyva*, 2011-NMSC-009, ¶¶ 49, 51, 149 N.M. 435, 250 P.3d 861 (holding that a defendant must raise the broader protection of the state constitution and provide a factual basis for the same to adequately preserve the issue for review). Further, while it is true that Article II, Section 10 provides some greater protection than the Fourth Amendment in cases involving the assertion of authority by a police officer without the use of physical force, Defendant has not made a showing that the greater protections are applicable where, as here, there is no flight or non-compliance. *See State v. Garcia*, 2009-NMSC-046, ¶ 35, 147 N.M. 134, 217 P.3d 1032 (holding that, unlike under the federal Fourth Amendment, Article II, Section 10 of the New Mexico Constitution does not require an individual to submit to an officer's show of authority to invoke its protections). Additionally, to the extent Defendant argues that this Court should apply a subjective test to the New Mexico constitutional analysis, we note that, unlike the federal Fourth Amendment, Article II, Section 10 does not define the nature of the government action solely in relation to the suspect's subjective reaction. *See id.* ¶¶ 32, 35 (rejecting the approach establishing a seizure based on the suspect's subjective reaction "and instead maintain[ing] [the] free-to-leave test as the proper measure of a seizure under Article II, Section 10"). Rather, "[t]he test is an objective one based upon a reasonable person standard, not the subjective perceptions of the particular individual." *State v. Walters*, 1997-NMCA-013, ¶ 12, 123 N.M. 88, 934 P.2d 282. Accordingly, we limit our analysis to the Fourth Amendment. *See id.* ¶ 9 (assuming that the protection provided by the state

and federal constitutions is identical when a defendant fails to present an argument showing that the state constitution provides greater protection).

**{4}** A person is seized within the meaning of the Fourth Amendment "when, in view of all the circumstances, the person is accosted and restrained such that a reasonable person would have believed he or she was not free to leave." *State v. Baldonado*, 1992-NMCA-140, ¶ 6, 115 N.M. 106, 847 P.2d 751. "Seizure under the Constitution is a question of law, but it is a question of fact whether a person was accosted and restrained in such a manner that a reasonable person in the same circumstances would believe he was not free to leave." *Walters*, 1997-NMCA-013, ¶ 8. To determine when a person was seized, we evaluate: "(1) the circumstances surrounding the contact, including whether police used a show of authority; and (2) whether the circumstances of the contact reached such a level of accosting and restraint that a reasonable person would have believed he or she was not free to leave." *State v. Murry*, 2014-NMCA-021, ¶ 14, 318 P.3d 180 (internal quotation marks and citation omitted). On appeal, we review factual questions for substantial evidence, with deference to the district court's findings, and the legal question of whether Defendant was free to leave, and therefore seized, de novo. *See id.* ("The question for the reviewing court is whether the [district] court's result is supported by substantial evidence, not whether the [district] court could have reached a different conclusion.").

**{5}** At issue here is whether the officer's use of his spotlight constituted a "show of authority at such a level of accosting and restraint that it would have conveyed the message to [Defendant] that [she was] not free to leave." 2014-NMCA-021, ¶ 20 (internal quotation marks omitted). This Court has previously recognized that the use of a spotlight can constitute a show of authority. *See City of Roswell v. Hudson*, 2007-NMCA-034, ¶ 13, 141 N.M. 261, 154 P.3d 76 ("[The d]efendant and the driver were legally parked and not engaged in any illegal or suspicious activity. They were simply sitting in the vehicle. A police car coming behind them, stopping, and shining its spotlight at them at that hour of the night constituted a show of police authority."). As such, Defendant appears to argue that the district court misapplied the law because an officer's use of a spotlight constitutes a per se seizure in New Mexico. This argument is unavailing; there are no per se rules in this context. *See, e.g.*, *Baldonado*, 1992-NMCA-140, ¶ 1 ("These consolidated cases raise the question of whether there is a seizure, as a matter of law, whenever the police pull up behind a stopped car and turn on their flashing lights. We hold that there is not[.]"). A rule that an officer's use of a spotlight creates a per se seizure would discourage officers from using such lights when necessary for their safety or the safety of others. *See id.* ¶ 15 ("We are loathe to create a situation in which officers would be discouraged from acting to help stranded motorists, from acting in the interest of the safety of the travelling public, or from acting in the interest of their own safety.").

**{6}** While *Hudson* recognizes that the use of a spotlight can constitute a show of authority, it does not stand for the proposition that any time a spotlight is illuminated on a parked vehicle a seizure has occurred. *See* 2007-NMCA-034, ¶ 14 (considering use of the spotlight in the totality of the circumstances and holding that a defendant was

seized when the police officer was in a marked car, shone his spotlight into the defendant's car, *and* demanded identification). The use of a spotlight might cause a reasonable person to feel himself the object of official scrutiny, yet, such directed scrutiny does not on its own amount to a seizure. *See Walters*, 1997-NMCA-013, ¶ 26 ("Under the record before us, the [district] court could reasonably have found that the officer's act of stopping and turning on his emergency lights after [the d]efendant had pulled off the road did not convert the situation into a seizure."). Nor does a show of authority on its own equate to a seizure. *See, e.g.*, *Baldonado*, 1992-NMCA-140, ¶ 18 (holding that there is no seizure when an officer pulls up behind a stopped car and turns on the police car's emergency lights, but acknowledging that there may be a seizure when other circumstances, such as the officer's demeanor, indicate that the driver is not free to leave). An officer demonstrates authority simply by walking up to an individual while in uniform and identifying himself as a police officer, *see Hudson*, 2007-NMCA-034, ¶ 13, but does not effect a seizure every time he does so. *See Walters*, 1997-NMCA-013, ¶ 18 ("[O]ur courts and the federal courts have held that a police officer may approach an individual, ask questions, and request identification without the encounter becoming a seizure.").

**{7}**      Although the use of a spotlight alone does not constitute a seizure as a matter of law, it must still be considered as a factor under the totality of the circumstances. *See Murry*, 2014-NMCA-021, ¶ 12 (establishing when a seizure occurs under the Fourth Amendment "is a case-by-case determination balancing the intrusion into individual privacy against the [s]tate's interest in crime prevention, looking at the totality of the circumstances"). Only where an officer's show of authority, including by the use of a spotlight, has in some way restrained a person's liberty, may we conclude a seizure has occurred. *See Walters*, 1997-NMCA-013, ¶ 12 (analyzing the events leading up to the defendant pulling over and the officer's subsequent use of emergency lights and words with the defendant to determine if a seizure occurred).

**{8}**      In this case, the district court made explicit factual findings about the circumstances surrounding the stop, upon which the parties agree. It found that Defendant stopped and parked voluntarily, rather than in response to any signal from the officer. Further, it found that the officer parked his vehicle twenty yards from Defendant's vehicle, did not block or restrict Defendant's ability to drive away, and did not deploy his patrol car's emergency light bar or otherwise assert any commands. *Compare Garcia*, 2009-NMSC-046, ¶ 41 (holding that the defendant was seized when the officer stopped his marked car close to the defendant, shone the spotlight on him, and ordered or yelled at the defendant to stop); *with State v. Lopez*, 1989-NMCA-030, ¶ 13, 109 N.M. 169, 783 P.2d 479 (comparing cases where seizure was not found until the moment an officer blocked the progress of a vehicle or otherwise gave orders to the people inside of the vehicle). When the officer turned his patrol car's spotlight on Defendant's vehicle, the officer did not see any occupants, but saw that the driver's seat was reclined, and approached the vehicle. The officer then knocked on the window, at which time Defendant expressed her desire to leave.

**{9}** Given these facts, we disagree with Defendant that the turning on of the spotlight was sufficient to cause Defendant to believe that she was not free to leave at that point. The district court made no findings, nor was there any indication that the spotlight was used as a means of intimidation instead of as a matter of practical necessity given the time of night. *See Walters*, 1997-NMCA-013, ¶¶ 21, 22 (reasoning that "flashing lights may be used as a show of authority, [but] they also perform other functions"). Nor did the officer park his vehicle in a manner that obstructed or blocked Defendant's ability from driving away. *See Lopez*, 1989-NMCA-030, ¶ 13.

**{10}** Viewing the facts in the light most favorable to the district court's decision, we conclude that the officer's use of a spotlight did not constitute a seizure as a matter of law. Instead, we agree with the district court that "Defendant was seized when [the officer] knocked on her window and communicated with her that she was not free to leave." *See State v. Gutierrez*, 2008-NMCA-015, ¶ 9, 143 N.M. 522, 177 P.3d 1096 (stating that a seizure might occur when "the use of language or tone of voice indicat[es] that compliance with the officer's request might be compelled" (internal quotation marks and citation omitted)); *see also Murry*, 2014-NMCA-021, ¶ 9 (stating that "[the d]efendant was seized by police when, after the two officers approached the parked vehicle [the defendant] was sitting in, [one of the officers] ordered the driver to open his door").

**{11}** Having determined the point in time when the seizure occurred, we will affirm if the seizure was supported by reasonable suspicion. We note that the specific articulable facts sufficient to support reasonable suspicion of DWI developed between the point of the initial spotlight and the time at which Defendant was seized. Initially, the officer began following Defendant's car because it was going between 5 and 10 miles per hour in a 25 mile-per-hour zone, which indicated a DWI in the officer's mind. After Defendant pulled up to a residence, the officer checked the vehicle's license plate and discovered it was registered to a different address. When the officer spotlighted Defendant's car, he noticed it was parked straddling the sidewalk, despite there being room to pull up into the driveway. With the spotlight still pointed at Defendant's vehicle, the officer got out of his car and walked to the driver's door. As he was walking toward the car, just outside the driver's side door, the officer "noticed that there was a liquid on the ground that looked to have just been poured there" and that smelled of alcohol. The officer looked inside the car and saw Defendant lying in the reclined seat, talking on her cell phone. The officer knocked on the window and asked Defendant what she was doing there, when he noticed she had blood-shot eyes. Defendant replied by saying that she just wanted to go home, at which time the officer told Defendant that she was not free to leave. The officer testified that when he knocked on the window, he was investigating a drunk driver "[b]ased on the slow driving, the vehicle obviously not belonging there, it stopped on the sidewalk, [and] the odor of alcohol either coming from the vehicle or from the substance on the ground."

**{12}** The district court incorporated these facts into its finding, unchallenged by Defendant on appeal, that the officer had reasonable suspicion at the time of the seizure "based on [Defendant's] slow driving, the manner in which Defendant parked

her vehicle, the fresh liquid substance outside of Defendant's vehicle, the smell of alcohol, and Defendant's blood shot eyes." *See* Rule 12-318(A)(4) NMRA (stating that an appellant's brief "shall set forth a specific attack on any finding, or the finding shall be deemed conclusive"); *State v. Urioste*, 2002-NMSC-023, ¶ 2, 132 N.M. 592, 52 P.3d 964 (indicating that the trial court's findings are conclusive when not attacked on appeal). In addition, Defendant did not argue below that these facts were insufficient to support reasonable suspicion for a DWI investigation. Defendant instead argued that the seizure occurred at an earlier point in time, at which point it was undisputed by the parties that the officer was without reasonable suspicion. Consistent with Defendant's argument to the district court, Defendant's argument on appeal that the officer did not have reasonable suspicion until after he spotlighted her vehicle, approached her on foot, and spoke with her, essentially concedes that the officer had reasonable suspicion at the time the district court found that Defendant was seized. As such, viewing the facts in the light most favorable to the district court's decision, we conclude that the officer had reasonable suspicion to investigate for DWI at the time he seized Defendant.

**CONCLUSION**

**{13}**    The decision of the district court is supported by substantial evidence, and the district court correctly applied the law to the facts when it ruled in favor of the State. We affirm.

**{14}    IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JACQUELINE R. MEDINA, Judge**