This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42404**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JOSHUA CRANE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Curtis R. Gurley, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** This matter was submitted to the Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Having considered the brief in chief, concluding the briefing submitted to the Court provides no possibility for reversal, and determining that this case is appropriate for resolution on Track 1 as defined in that order, we affirm for the following reasons.

**{2}** Defendant entered into a conditional plea, reserving his right to appeal from the district court's order denying his motion to suppress. [BIC 1] Specifically, he argues that the district court erred in denying his suppression motion because the officer who stopped him did not have reasonable suspicion and was not acting pursuant to the community caretaker doctrine. [BIC 5]

**{3}** "Whether an individual has been seized in violation of the Fourth Amendment is a mixed question of law and fact." *State v. Walters*, 1997-NMCA-013, ¶ 8, 123 N.M. 88, 934 P.2d 282. "Seizure under the [c]onstitution is a question of law, but it is a question of fact whether a person was accosted and restrained in such a manner that a reasonable person in the same circumstances would believe [they were] not free to leave." *Id.* "A de novo review is given to the district court's application of the law to the facts. Factual questions are reviewed on appeal for substantial evidence, viewing the facts in the light most favorable to the prevailing party." *Id.* (citation omitted). "The question for the reviewing court is whether the trial court's result is supported by substantial evidence, not whether the trial court could have reached a different conclusion." *Id.* "When the trial court's ruling is supported by substantial evidence, this Court will not disturb the denial of a motion to suppress unless it appears that the ruling was erroneously premised on the law or the facts." *Id.*

**{4}** "Case law recognizes three types of police-citizen encounters: (1) arrests, which require probable cause, (2) investigatory stops, which require reasonable suspicion, and (3) community caretaking encounters." *Id.* ¶ 10. "The first two are seizures, invoking constitutional protections. The third is a voluntary encounter, involving no coercion or detention; it thus falls outside the Fourth Amendment." *Id.* (citation omitted). In *Walters,* this Court discussed consensual encounters explaining that

> [t]he test for determining if a police-citizen encounter is consensual depends on whether, under the totality of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. The test is an objective one based upon a reasonable person standard, not the subjective perceptions of the particular individual. The test presumes an innocent reasonable person. In making this determination, the court should consider the sequence of the officer's actions and how a reasonable person would perceive those actions. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred.

*Id.* ¶ 12 (internal quotation marks and citations omitted).

**{5}** According to Defendant's brief in chief, the following evidence was presented at the hearing on the motion to suppress. At approximately two o'clock in the morning, a Farmington police officer "passed a vehicle driving the other direction that was making a loud thumping noise, which sounded like a flat tire." [BIC 1] Concerned about safety

issues, the officer "turned around intending to initiate a stop for the vehicle and tell the driver about the flat tire." [BIC 1] After turning around, the officer observed the vehicle turn into a parking lot, stop, and the driver get out of the car and walk to the rear tire. [BIC 1] Although the officer "was no longer concerned about the car's safety once it was pulled over, he nonetheless parked behind the vehicle, advised dispatch of the plate number, activated his overhead takedown light, and got out of the vehicle to assist [Defendant] with the tire." [BIC 1]

{6}     Upon seeing the officer approach the vehicle, Defendant stumbled towards the driver's seat, rummaged around, and then handed the officer his insurance information even though the officer did not ask for it. [BIC 2] While Defendant was retrieving his insurance, the officer observed two boxes, but no actual bottles, of Crown Royal in the back seat. [BIC 2] The officer then testified that when Defendant was facing him, he could smell "the odor of intoxicating liquor emitting from his breath and person" and observed a slack expression, disheveled appearance, and bloodshot eyes. [BIC 2] Because of these observations, the officer began a DWI investigation and asked whether Defendant had been drinking. [BIC 2] Based on Defendant admitting to having a beer, the officer then asked if Defendant would undergo the standardized field sobriety tests. Defendant "showed signs of impairment," eventually agreed to take a breath alcohol test, and the "results were [0.]2 and [0.]2" [BIC 2] Subsequently, Defendant was charged with one count of aggravated driving under the influence of intoxicating liquor.

{7}     Defendant filed a motion to suppress arguing that he was seized without reasonable suspicion. [BIC 3] The State responded arguing that Defendant was not seized when the officer first approached him to assist with the flat tire because the approach was authorized by the community caretaker doctrine. [BIC 3] However, the State argued that because the officer observed signs of intoxication after making contact with Defendant, the officer was then permitted to seize Defendant on suspicion of driving under the influence of intoxicating liquor. [BIC 3] The district court found that the officer's initial approach was justified because he identified a "safety concern" and stopped to render assistance with the flat tire, the officer "was acting validly within his role as a public servant, and the intrusion upon Defendant's privacy was minimal." [BIC 4-5; RP 148, ¶ 7] The district court further found that "[o]nce evidence that Defendant might be impaired was observed, [the o]fficer['s] role converted to that of investigator, based on a reasonable suspicion that Defendant may have been driving impaired." [BIC 5; RP 148, ¶ 8]

{8}     Defendant argues that the officer did not have reasonable suspicion when he was seized and that the officer's seizure was not justified by the community caretaker doctrine because he did not require assistance at the time and the officer's safety concerns had dissipated. [BIC 7-12] This Court addressed a similar issue in *Walters*. 1997-NMCA-013. There, the officer followed a vehicle as it turned from a U.S. highway onto a rural road, and the defendant, not knowing that the car behind him was a police car, thought the driver of the car behind him "'wanted the road' and might be impaired" so he pulled over. *Id.* ¶¶ 4-5. The officer pulled up behind the vehicle, approached it,

and asked the defendant why he stopped, ultimately detecting the odor of alcohol on the defendant's breath. *Id.* ¶¶ 5-6. The defendant argued that the police officer did not conduct the stop based on the community caretaker doctrine because the stop was not voluntary. *Id.* ¶ 11. According to the defense in that case, the defendant had pulled over because he felt compelled by the manner in which the officer followed him and reasonable suspicion was required because the stop was not consensual. *Id.* This Court disagreed and determined that a district court could have reasonably concluded that the defendant was not compelled to stop and that the officer was acting within his caretaker function. *Id.* ¶¶ 11-12, 15, 25.

{9} In this case, as in *Walters*, the officer initially sought to stop Defendant because of his safety concern regarding the flat tire. Then, although the officer's concern dissipated upon seeing Defendant turn into a parking lot, he followed Defendant to render assistance. He pulled up behind Defendant in the parking lot, several feet behind Defendant's vehicle, leaving Defendant room to leave. [RP 148, ¶ 7] He also turned on his takedown lights, which the district court described as "lights [that] are essentially floodlights." [RP 146, ¶ 6] Finally, the officer did not engage his emergency lights, approached Defendant in a neutral manner, and introduced himself. [RP 148, ¶ 7]

{10} Although Defendant contends that he was seized at this point, and relies on numerous cases to support his argument that when an officer approaches a vehicle and makes contact with the driver that person has been seized, we are unpersuaded. [BIC 8-10] The cases to which Defendant cites are distinguishable. In those cases, the officers' actions were not pursuant to any community caretaker function and the initial contact with the defendant was aggressive or intimidating. *See State v. Murry*, 2014-NMCA-021, ¶ 24, 318 P.3d 180 (concluding that when "two police officers approached a parked car and one officer immediately ordered the driver to open his door" a "reasonable innocent person receiving the same order from a uniformed police officer would perceive that he was not free to disregard the order, let alone free to leave" and that the driver had been seized); *State v. Soto*, 2008-NMCA-032, ¶ 13, 143 N.M. 631, 179 P.3d 1239 (explaining that when officers pulled up next to and stopped the defendant's bicycle, their questioning of the defendant's activities, their request for his identification, their conduct in retaining the defendant's driver's license to run a warrant check, the lateness of the hour, and the defendant's "isolation" on the service road "conveyed to [the d]efendant that the officers expected [the d]efendant to comply with their requests" and that a reasonable person would not have felt free to terminate the encounter); *City of Roswell v. Hudson*, 2007-NMCA-034, ¶ 13, 141 N.M. 261, 154 P.3d 76 (explaining that a police car coming behind a vehicle, stopping, and shining its spotlight along with demanding identification constituted a show of police authority such that the occupants of the vehicle would not feel free to leave); *State v. Williams*, 2006-NMCA-062, ¶¶ 20-21, 139 N.M. 579, 136 P.3d 579 (concluding that the officer's approach was as if he were conducting a traffic stop such that a reasonable person would not feel free to leave and that the officer was not acting pursuant to any safety concerns).

**{11}** As explained above, the officer in this case stopped to render assistance to Defendant, was alone when he approached the vehicle, did not approach Defendant in an aggressive or intimidating manner, and did not demand to see his identification. As a result, based on our case law and the circumstances of this case, we agree with the district court that the officer "was acting validly within his role as a public servant, and the intrusion upon Defendant's privacy was minimal" when he followed Defendant into the parking lot to render assistance with the flat tire. [RP 148, ¶ 7] We therefore conclude that the district court did not err when it found that Defendant was not seized.

**{12}** Defendant further contends that his seizure was not justified by the community caretaker doctrine because he "did not require assistance at the time and [the o]fficer['s] concern about [Defendant] driving on a flat tire had dissipated." [BIC 10] We are not persuaded. Although Defendant may not have needed any assistance at that point, given the circumstances of this case, including the fact that it was approximately two o'clock in the morning, the officer's stop to render aid was reasonable. His intrusion of Defendant's privacy was minimal and we do not want to discourage community caretaker stops. *See Walters*, 1997-NMCA-013, ¶ 22 ("In community caretaker cases, the reasonableness of the police action is determined by balancing the public interest furthered by the police conduct against the degree of intrusion upon the privacy of a citizen."); *id.* (explaining that "[w]e are loathe to discourage community caretaker stops or make them hazardous for motorists or the police"). As such, the officer's act of stopping to render aid, turning on his takedown light, and introducing himself to Defendant did not convert the situation into a seizure. However, after speaking with Defendant, detecting the odor of alcohol, and observing his disheveled appearance and bloodshot eyes, the officer had reasonable suspicion to investigate further. *See id.* ¶ 26 (explaining that "[a] caretaking encounter . . . does not prevent an officer from making observations that lead to reasonable suspicion."). Accordingly, we conclude that no seizure occurred before the officer spoke to Defendant, and that the officer had reasonable suspicion to start a DWI investigation after speaking with Defendant and observing signs of intoxication.

**{13}** For the foregoing reasons, we affirm the district court's order denying Defendant's motion to suppress.

**{14} IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**JANE B. YOHALEM, Judge**